IFP
1539

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GODINA JONES,

        Plaintiff,

  vs.

MICHAEL E. LAMB, PROTHONOTARY
OF THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA,
and CONSTABLE JOHN A. SNYDER,

        Defendants.

CIVIL ACTION

C.A. No.  **05-1052**

RECEIVED

JUL 29 2005

CLERK, U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

## COMPLAINT

### I. INTRODUCTION

      This action challenges the constitutionality of Rule 1008B of the Pennsylvania Rules of Civil Procedure for District Justices. (Pa.R.Civ.P.D.J. No. 1008B, hereinafter referred to as "Rule 1008B")  This Rule has the effect of depriving poor residential tenants of their possessory rights to their leased residences, and preventing them from remaining in their homes pending their  statutorily-authorized  *de novo* trials following appeals from adverse magisterial district court eviction judgments, because it requires the tenant/appellants to pay an unaffordable sum as a condition to receiving a stay.

      Rule 1008B requires that tenants who file Notices of Appeal requesting *de novo* trials following magisterial district court eviction judgments, must pay a bond of  (1) the lesser of the judgment for rent allegedly in arrears, or three times the monthly rent, and

(2) ongoing interlocutory rent, based on the determination of the magisterial district judge.

The Defendant Prothonotary enforces this requirement regardless of whether the magisterial district judge determination is wrong as a matter of fact or law.   The Defendant Prothonotary will issue a "supersedeas" which stays the tenant's eviction pending the outcome of the *de novo* trial, only if the tenant/appellant pays the full bond upon the filing of the appeal, and ongoing rent, thereafter.  If the tenant fails to pay the full bond when the appeal is filed, then the Defendant Prothonotary will not issue the "supersedeas."

Rule 1008B contravenes the rights of poor tenants to substantive and procedural due process as guaranteed by the Fourteenth Amendment.  This is because it deprives indigent tenants of their right to remain residents of their leased premises before they are afforded the opportunity to present meritorious defenses to eviction hearings at the *de novo* trials scheduled following appeals from magisterial district court eviction judgments.  Moreover, Rule 1008B contravenes the constitutionally-guaranteed due process rights of poor tenants because it inevitably confines the entire litigation of their eviction disputes to the magisterial district court arena, a forum which was not designed to provide constitutionally adequate due process.

Finally, Rule 1008B violates indigent tenants' rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment, because it imposes financial burdens upon tenants which are not imposed upon any other class of litigants who desire to appeal *de novo* adverse magisterial district court judgments.  In fact it even imposes a greater burden on residential tenants than on commercial tenants.

## II. JURISDICTION

1. This action is brought pursuant to 28 U.S.C. §§1331, 1343(3) and (4) and pursuant to 42 U.S.C. §1983 to vindicate Ms. Jones' rights secured by the Fourteenth Amendment to the United States Constitution. Ms. Jones' claim for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

## III. PARTIES

2. Plaintiff Godina Jones (also known as Godina Jones Jett) is an adult individual and tenant who, for approximately six months has leased and resided at 519 McClintock Ave., Pittsburgh, PA, 15214, along with her seventeen-year-old son, fourteen-year-old daughter, and thirteen-year-old daughter.

3. Ms. Jones and her family are poor. Ms. Jones is a school bus driver for Monark Student Transportation Corporation, and her income varies depending on whether school is in session. During the school year, Ms. Jones earns an average gross of $1500 per month. During summers, Ms. Jones cleans the school buses and drives for an occasional charter trip. During those months, she only makes up to a gross of $600 per month at Monark, and a gross of $522 per month in a part-time housekeeping position with Central Properties. The father of Ms. Jones' children pays child support sporadically at best. He has not paid any support since December of 2004. Thus, the family of four must rely upon Ms. Jones' income of $1500 per month during the school year and $1122 per month during the summer to provide their basic needs.

4. Defendant Michael E. Lamb is the Prothonotary of the Court of Common Pleas of Allegheny County, Pennsylvania.  As Prothonotary, Mr. Lamb is responsible for the proper administration of the Allegheny County Courts of Common Pleas, including, *inter alia,* the acceptance of Notices of Appeal requesting *de novo* trials from magisterial district court judgments, and the issuance of supersedeas directives (stays) against eviction orders granted by magisterial district judges.

5. Defendant John A. Snyder is a state-licensed constable who, *inter alia*, is authorized to execute eviction orders entered against tenants by magisterial district judges, and who served notice upon Ms. Jones of his intention to do so on behalf of Pinecastle Realty, the owner/landlord of the residential property leased by Ms. Jones.

## IV.  STATEMENT OF FACTS

6. On January 14, 2005, Ms. Jones entered into a written lease agreement with Pinecastle Realty LLC (hereinafter "Pinecastle"), for the rental of the residence at 519 McClintock Ave., Pittsburgh, PA 15214, in consideration of $780 monthly rent.  A copy of the lease is attached as Exhibit A.

7. As of January 14, 2005, Ms. Jones was a participant in the U.S. Department of Housing and Urban Development Section 8 Housing Voucher Program.  The Section 8 voucher program is a federal housing program which enables low-income tenants to rent otherwise-unaffordable privately-owned residential units.  Under this program, a landlord is permitted to charge an approved reasonable fair market rent for the leased property, although the Section 8 tenant is obligated to pay only approximately 30% of the tenant's adjusted gross income to the landlord.  The balance of the rent is

guaranteed and paid by the federal Section 8 program.

8. The Section 8 program is regulated by the Department of Housing and Urban Development (HUD), and in Pittsburgh, administered by the Housing Authority of the City of Pittsburgh (HACP).  Pursuant to this program, the HACP establishes the maximum rent the landlord may charge and collect in accordance with HUD guidelines. After rent is set and the HACP and the landlord sign a Housing Assistance Payments Contract (HAPC), the landlord and the tenant sign a lease in accord with the HUD/HACP approved rent and other HUD requirements.

9. Ms. Jones and Pinecastle entered into the lease at Exhibit A in contemplation of its approval by the Housing Authority of the City of Pittsburgh (hereinafter "HACP").

10. HACP did not approve the Exhibit A lease for $780 monthly rent.

11. Rather, on January 16, 2005, HACP approved a second lease between Ms. Jones and Pinecastle for the rental of the same residence at 519 McClintock Avenue, but in consideration of $540 monthly rent.   Although Ms. Jones and Pinecastle signed this second lease on March 24, 2005, the term of the lease was  retroactive to January 16, 2005.  A copy of the second lease is attached as Exhibit B.

13. On that same day, HACP and Pinecastle entered into a Housing Assistance Payments Contract (HAP Contract), Exhibit C, which included a Tenancy Addendum, Exhibit D,  to be attached to and incorporated, into Ms. Jones' lease.

14. On January 18, 2005, HACP notified Ms. Jones that HACP had determined the total fair market rent to Pinecastle for the apartment at 519 McClintock was $540. Further, HACP notified Ms. Jones that her portion of the monthly rent was $240, and HACP's portion was $300.  *See* Exhibit E attached.

15.  Part B(6)(a) of the HAP Contract and 24 CFR Section 982.507(a)(2)(i) and (4) provide that "the rent to owner may at no time exceed the reasonable rent for the contract unit as most recently determined or redetermined by the PHA (public housing authority)...."

16.  Section 5(e) of the  Section 8 Tenancy Addendum, incorporated by reference into Ms. Jones' January 16, 2005 Section 8 approved lease, absolutely prohibits Pinecastle from "charg[ing] or accept[ing], from Ms. Jones "or any other source, any payment for rent in addition to the [HACP approved] rent to owner." Section 5(f) of the Tenancy Addendum, requires an owner to immediately return any excess rent payments to the tenant.

17.  Despite the HACP approved lease for $540 monthly rent, Pinecastle demanded from Ms. Jones a total of $780 monthly rent, thereby requiring Ms. Jones to pay $480 per month, twice the amount she was required to pay under the Section 8 lease.

18.  HACP did not redetermine the reasonable rent to Pinecastle prior to Pinecastle's increase in the rent it demanded from Ms. Jones.

19.  As of January 2005, Ms. Jones and her family had been homeless for four months.  Ms. Jones agreed to pay Pinecastle $480 per month because she was desperate to find housing for her family.

20.  Because Ms. Jones and her family were not able to move into the residence at 519 McClintock Avenue until  February 2005, Pinecastle did not charge Ms. Jones, and she did not pay rent for the month of January.

21.  During the months of February, March, April, and May 2005,  Ms. Jones paid

Pinecastle $480 per month–twice the amount required by the HAP contract entered between Pinecastle and HAP and by the January 16, 2005 HACP approved lease agreement entered between the parties   Pinecastle never returned any excess rent to Ms. Jones.

22.  Throughout this same period, and continuing through the present date, Pinecastle has also been paid, and continues to be paid, $300 per month from the HACP.

23.  Due to her limited income, compounded by the significant reduction in income due to the end of the school year, as well as the fact that, for four months, she had been paying twice the monthly rent she was required to pay by her Section 8 lease, and as determined by HACP to be 30% of her adjusted income, Ms. Jones was unable to tender additional rent to Pinecastle in June and July 2005.

24.  On July 1, 2005, Pinecastle instituted an eviction action against Ms. Jones before a Pennsylvania magisterial district court judge, alleging she had breached her lease by not paying rent in the amount of $1020.  The complaint stated that the monthly rent for the apartment at 519 McClintock was $650 per month.  A copy of this "Landlord And Tenant Complaint" is attached at Exhibit F.

25.  On July 11, 2005, Ms. Jones was half an hour late for the magisterial district court hearing due to circumstances beyond her control.  She was not permitted to attend the hearing at that point.  In Ms. Jones' absence, the magisterial district judge entered a judgment granting possession of the premises at 519 McClintock to Pinecastle.  Additionally, the magisterial district judge found Ms. Jones liable for Pinecastle's entire rent claim of $1020, plus $93.00 costs.  The magisterial district

judge's Notice Of Judgment, issued July 11, 2005, is attached as Exhibit G.

26.  As of July 1, 2005, the date on which Pinecastle filed the Landlord And Tenant Complaint against Ms. Jones, Ms. Jones did not owe Pinecastle any rent under the terms of the HACP approved lease and Tenancy Addendum.  Indeed, under Section 5(f) of the Tenancy Addendum, Pinecastle owed Ms. Jones $480 in excess rent paid ($960 excess rent paid from February 2005 through May 2005 less $480 as the proper amount of rent owed by Ms. Jones to Pinecastle for June and July 2005 rent).

27.  On July 20, 2005, based upon the foregoing meritorious defenses, Ms. Jones' filed a timely Notice of Appeal from the magisterial district court judgment pursuant to Pennsylvania law which permits *de novo* trials in the courts of common pleas, upon appeals filed within ten (10) days from the entry of magisterial district court judgments.  Pa.R.Civ.P.D.J. 1002B.

28.  Pennsylvania law generally provides that a defendant's filing of an appeal from a district justice judgment, demanding a *de novo* trial, operates as an automatic supersedeas (i.e., a stay) delaying execution of the district justice judgment, pending the outcome of the *de novo* trial.  However, with regard exclusively to defendant/tenants, Rule 1008B grants a supersedeas only to those tenants who can afford to deposit with the Prothonotary a specifically-defined money bond with the Prothonotary.  Pursuant to Rule 1008B, the bond must be equal to the lesser of three (3) months' rent or the rent actually in arrears on the date of the filing of the appeal-- regardless of the propriety of the judgment amount.  Each of these amounts is determined, as a final matter, by the magisterial district judge.

29.  Pursuant to Rule 1008B, the lowest possible amount that Ms. Jones could

have deposited with the Prothonotary in order to prevent her forcible eviction pending the outcome of the *de novo* trial upon her appeal, would have been $720, which is (3) months' rent under the HACP approved lease.

30.   On the date of her appeal, July 20, 2005, Ms. Jones, who is indigent and who had already paid $480 to Pinecastle in excess of the monthly rent required by her HACP approved lease and Tenancy Addendum, did not possess $720 in funds for obtaining the supersedeas.  Therefore, no supersedeas was issued.

31.   Consequently, on July 22, 2005, Pinecastle requested and the magisterial district judge issued an execution writ, known as an Order For Possession, Exhibit H.

32.   On July 25, 2005, Defendant Constable John A. Snyder served the Order For Possession upon Ms. Jones.  The Order provides that, unless Ms. Jones and her children vacate their home by August 5, 2005, Defendant Snyder will forcibly evict Ms. Jones and her three minor children from the home in which they have resided–and for which they have paid more than all the rent due under the pertinent lease–for the past six months.

33.   Unless Defendant Prothonotary issues a supersedeas in Ms. Jones' appeal, Ms. Jones and her children will be forcibly and permanently evicted from their home, without first having been afforded any opportunity at a *de novo* hearing to prove that the landlord did not have any legal basis or any other meritorious justification for terminating their lease and evicting them.

34.   Ms. Jones and her three children have nowhere to move, and no place to stay, even temporarily.

35.   They do not have any family or friends who have the means or resources to

provide Ms. Jones and her children with adequate temporary shelter.  If they are evicted, Ms. Jones and her children will become homeless.  They will be displaced from the community in which they have resided for the past six months, thereby disrupting their lives.

36.  If forcibly evicted, Ms. Jones and her family could be indefinitely separated in order to obtain emergency shelter.  It is highly likely that Darron Jones, Ms. Jones' eldest child, would not be permitted to stay in a temporary shelter with his mother.  Many shelters will not permit older boys to remain in the same temporary residence space as women and younger children.  Thus, Ms. Jones would be unable to watch over and provide care to her minor son.

37.  Additionally, Darron Jones has seizures which seems to coincide with added stress and discomfort.  These symptoms greatly increase the severity of any separation caused by Ms. Jones and her son's need for emergency shelter because such separation would prevent Ms. Jones from providing necessary care for her son and ensuring that his needs are met on a regular basis.

38.  Furthermore, if Ms. Jones and her children are forcibly evicted, all of their family belongings may be destroyed, damaged, or lost.  Ms. Jones does not have the financial resources to remove her family's belongings from the residence or to place them in storage.  Consequently, Ms. Jones and her children will lose their entire worldly possessions and be left without the means to provide for the necessities of daily life.

## V. CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION: DEPRIVATION OF MS. JONES' DUE PROCESS PROTECTIONS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

39. Paragraphs 1 - 38 of the Complaint are hereby incorporated by reference as though they were now set forth in full.

40. Upon her filing of the appeal from the magisterial district court eviction judgment, Ms. Jones became entitled to a *de novo* trial to determine the merits of Pinecastle's claims for rent and possession, and her defenses thereto.

41. Due to her and her family's poverty, Ms. Jones utterly lacks the financial ability to pay the minimum $720 that would be demanded by Defendant Prothonotary, pursuant to Rule 1008B, to prevent her and her family's eviction prior to the common pleas' court trial and determination of the merits of the eviction case filed against her.

42. Ms. Jones nonetheless is able to deposit with the Prothonotary one month's rent, in the amount of $240, and ongoing monthly rent thereafter, which would accrue pending the *de novo* appeal trial, to prevent any possible further financial prejudice to her landlord until the merits of the eviction action are decided at the *de novo* trial.

43. Even if, at the *de novo* trial, Ms. Jones presents her meritorious defenses and prevails, and even if it is determined that Ms. Jones and her children should not be evicted from their residence, without a supersedeas they will long since have been forcibly evicted from her residence, and they will long since have become homeless.

44. Once evicted, Ms. Jones and her children will be left without any meaningful relief, even if they prevail at the *de novo* trial.

45. Rule 1008B erects an unconstitutionally impermissible barrier, based solely

on inability to pay, to Ms. Jones' right to seek meaningful *de novo* review of the magisterial district court eviction judgment.

46.   Because Rule 1008B denies Ms. Jones and her children the right to remain in possession of their leased residence pending the outcome of a *de novo* appeal trial, the rule contravenes the due process guarantees of the 14th Amendment to the United States Constitution.

**B.     SECOND CAUSE OF ACTION: DEPRIVATION OF MS. JONES' DUE PROCESS PROTECTIONS UNDER THE FOURTEENTH AMENDMENT  OF THE UNITED STATES CONSTITUTION**

47.   Paragraphs 1-44 are hereby incorporated by reference.

48.   Under Pennsylvania law,  residential landlords are afforded the choice of two distinct judicial forums in which to institute eviction proceedings against residential tenants.  A landlord may either file an "ejectment action" in the Civil Division of the Court of Common Pleas or a "landlord/tenant complaint" in a neighborhood magisterial district court office.

49.   If a landlord chooses to file an ejectment action in the Court of Common Pleas, tenant/defendants are entitled to receive notice of the basis for the lawsuit by means of "fact pleading."   Prior to the ejectment trial, tenant/defendants are entitled to assert preliminary legal defenses, by means of preliminary objections or motions for summary judgment. Prior to trial, tenant/defendants are entitled to obtain pre-trial discovery.  Further, tenant/defendants are entitled to join additional defendants as parties to the landlord's lawsuit, as needed to establish appropriate liability.  Ejectment actions are litigated before either a jury or a law-trained judge, and must be tried in a court of record so that litigants may obtain appellate review of the issues asserted at trial.

50. On the other hand, a landlord additionally has the unilateral right to elect to file a Landlord and Tenant Complaint before a neighborhood magisterial district judge. These magisterial district court proceedings are strikingly distinct from proceedings before the courts of common pleas. In marked contrast to ejectment actions, neighborhood magisterial district judge landlord/tenant proceedings do not afford tenant/defendants with any of the foregoing procedural rights.

51. Landlord/plaintiffs in magisterial district court proceedings, as opposed to ejectment actions, do not provide fact-based notice of the grounds for the eviction lawsuit to tenant/defendants. Nor do tenant/defendants in magisterial district court proceedings have the right to assert pre-trial defenses to the lawsuit filed against them. Moreover, tenant/defendants in magisterial district court proceedings are denied pre-trial discovery of the matters complained of. Tenant/defendants have no right, in magisterial district court proceedings, to add additional defendants, despite the possibility that a party other than the named defendant could be liable to the landlord. See, Pa.R.Civ.P.D.J. 325.

52. District justices, unlike judges of the courts of common pleas (or juries who are instructed by the judges concerning the applicable law) need not, and often do not possess, legal training comparable to that of judges. Finally, district justice proceedings are not courts of record, thereby precluding any opportunity for the litigants to have the merits of the determination reviewed by the appellate judiciary.

53. Under Pennsylvania law, landlords--and not tenants--are granted the complete and exclusive right to choose in which of the foregoing forums an eviction action will be filed. Tenants have no right to demand that an action originally filed with a district justice be removed to the court of common pleas, or vice-versa.

54.  The Pennsylvania legislature has afforded tenant/defendants in magisterial district court proceedings the right to request and obtain trials *de novo* following adverse judgments of district justices, partly in recognition of the foregoing significant and severe constraints imposed upon litigants in district justice landlord/tenant proceedings contrasted to those of defendants in ejectment actions,

55.  Prior to the implementation of Rule 1008B, the Pennsylvania legislature permitted residential tenants who requested *de novo* trials following adverse district justice eviction judgments to deposit ongoing rent as a condition for remaining in their residences pending the outcome of the appeal trial.

56.  Since March 29, 1996, however, Pa.R.Civ.P. 1008B has required that the tenant deposit with the Prothonotary either three months' rent or the entire amount of rent in arrears (whichever is less) as determined by a district justice, in addition to ongoing monthly rent, as a condition for remaining in the disputed residence pending the outcome of the *de novo* eviction trial.

57.  Ms. Jones' landlord elected to file its eviction action against Ms. Jones in the neighborhood magisterial district court office, rather than in the court of common pleas.

58.  After the magisterial district court judge entered an adverse judgment against her, Ms. Jones requested a *de novo* trial.  Nevertheless, simply because she cannot afford to pay the bond required by Rule 1008B, Ms. Jones will not be protected against her and her children's forcible eviction--the very relief sought by the landlord and the merits of which remain to be decided by a pending *de novo* trial.

59.  To the extent that Rule 1008B deprives Ms. Jones from an opportunity to exercise her right to a *de novo* trial to litigate her defenses in a forum which provides full

and fair procedures, <u>prior to her and her children's eviction</u>, Ms. Jones has been

unconstitutionally deprived of the due process protections guaranteed by the Fourteenth

Amendment.

**D.      THIRD CAUSE OF ACTION: DEPRIVATION OF MS. JONES' RIGHTS TO EQUAL PROTECTION OF THE LAWS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

60.  Paragraphs 1 through 59 are hereby incorporated by reference.

61.  Pennsylvania law provides every litigant the right to a *de novo* trial following

an adverse magisterial district court civil determination, upon proper demand by the

affected litigant.

62.  In all cases other than eviction actions, defendants who properly request *de

novo* trials following adverse magisterial district court judgments are automatically

granted stays from execution of those adverse judgments, pending the outcome of the

*de novo* trials, regardless of the merits of those defendants' appeals.

63.  Additionally, tenant/defendants who properly request *de novo* trials following

adverse magisterial district court judgments, who have the financial means and

resources to obtain supersedeases by paying the sums required by Rule 1008B, likewise

are granted stays from execution of adverse possession (eviction) judgments, thereby

entitling those tenant/defendants to remain in their residences pending the outcome of

the *de novo* trials, also regardless of the merits of their tenant/defendants' appeals.

64.  However, those tenant/defendants who properly request *de novo* trials

following adverse district justice judgments <u>but who do not</u> have the financial means and

resources to pay the sums required by Rule 1008B, will not be granted stays from

execution of adverse eviction judgments.  Those defendants, <u>alone</u>, will not be entitled to

remain in their residences pending the outcome of the *de novo* trials, regardless of the merits of their appeals.

65.  Rule 1008B imposes upon poor tenant/defendants who file appeals from adverse magisterial district court eviction judgments, a condition for obtaining a supersedeas pending the outcome of *de novo* trials, which is impossible to fulfill, due exclusively to the poor defendants' indigency, and which is distinct from the conditions imposed upon all other similarly-situated defendant/appellants.  Rule 1008B erects for poor tenants, alone, an insurmountable barrier to receiving a supersedeas pending the outcomes, by *de novo* trials, of appeals from adverse magisterial district court eviction judgments.

66.  Due <u>exclusively</u> to her poverty, Godina Jones does not have the financial means to deposit the sum required by Rule 1008B in order for her and her family to remain in their residence pending the outcome of the *de novo* trial on the merits of the eviction action, to which she was legally entitled.

67.  Rule 1008B consequently deprives Ms. Jones of her right to equal protection guaranteed by the Fourteenth Amendment to the United States Constitution, because the Rule discriminates against her status as an indigent tenant/defendant/appellant without any rational basis.

## VI.  <u>CLAIMS FOR RELIEF</u>

The Plaintiff prays that this Honorable Court grant her the following relief:

A.  Determine and declare that Pa.R.Civ.P.D.J. 1008B creates an unconstitutional barrier to an indigent tenant's right to meaningful *de novo* review of the magisterial district court eviction judgment in contravention of the Due Process and Equal Protection

Clauses of the United States Constitution and rights secured under 42 U.S.C. §1983.

B. Enter a preliminary and permanent injunction enjoining the Prothonotary of the Court of Common Pleas from continued application of  Pa.R.Civ.P.D.J. No. 1008B which requires payment of the lesser of either the amount of rent in arrears or three times the monthly rent as determined by the district justice, without an opportunity to be heard;

C.  Enter a preliminary and permanent injunction enjoining the Prothonotary of the Court of Common Pleas to issue a supersedeas in the pending *de novo* appeal proceeding filed in the Court of Common Pleas of Allegheny County, Civil Division, at Pinecastle Realty v. Jones, LT 05-242, subject to Ms. Jones' deposit of one month's rent payment and monthly rent thereafter, throughout the pendency of her appeal to the Pennsylvania common pleas court.

D. Enter a preliminary and permanent injunction enjoining Defendant Constable Snyder from evicting Godina Jones and her children from their home on or after August 5, 2005

E. Grant such additional relief as the Court deems fitting and proper.

Respectfully Submitted,

/s/ Eileen D. Yacknin
Eileen D. Yacknin
Pa.I.D. No. 26525

/s/ Mary Ellen Droll
Pa.I.D. No. 67618

Neighborhood Legal Services Association
928 Penn Avenue
Pittsburgh, Pennsylvania 15222
(412) 255-6700 Ext. 6155, 6116

**Pinecastle Realty, LLC**
**P.O. Box 9607**
**Pittsburgh, PA 15226**
**(412) 379-5005**



## LEASE

Property Located at:   519 McClintock Avenue
                       Pittsburgh, PA 15214

1.   Godina Jones will be the tenant renting the house located on 519 McClintock Avenue, Pittsburgh, Pennsylvania beginning January 16, 2005 to December 31, 2005.

2.   The monthly rent for the property will be paid as follows: $780.00 per month due the 1st of each month.  Any payments made between the 5th and the 9th of that month will be subject to a $25 late charge and an evication notice will be mailed.  Any payments made between the 10th and the 15th of that month will be subject to the $25 late charge plus an additional $25 for a total of $50.  On the 16th of the month, if the rent with late charges has not been paid, eviction proceedings will begin.

3.   A security deposit in the amount of $780.00 will be due at the same time the lease is executed by the tenant-to-be.  If tenant should choose not to reside in the home once the lease has been executed and the security deposit payment has been received by the landlord, the tenants will forfeit the security deposit in the amount of $780.00.

4.   On October 1, 2005 the tenant, Godina Jones, must tell the owner, Pinecastle Realty, LLC, their plans of remaining in the house so as to give the owners time to rent the premises to another tenant.  At this time, it is expected that the tenant, Godina Jones, will be cooperative in the showing of the apartment.

5.   Tenant is responsible for any damage done to the property which is considered above and beyond normal wear and tear.  The security deposit will be used to repair any damage of this nature.  Tenant is responsible for the maintenance of all appliances provided and owned by the landlord.

6.   At signing of this lease the number of persons living in the home is (1) adult and (3) children.  No more persons shall begin residence in the apartment.

7.   Owner is responsible for repairs to the property that are not due to willful, contemplated destruction on behalf of the tenant.

8.   Owner has the right to inspect the property at any time providing a call 1 hour before inspection.  Tenant is to provide landlord with his/her phone number within 1 month of signing the lease.  If home telephone number is not available, tenant must provide a feasible mean of communication to landlord.

9.   Tenant is responsible for the payment of all utilities.

10.  No animals permitted.

11.  Tenant is responsible for snow removal.  Tenant is responsible for purchasing (2) garbage cans to keep outside and all garbage must be bagged appropriately and kept in garbage containers with lids so as not to attract rodents and animals.  Any pest control expense which is the result of tenant negligence will be the responsibility of the tenant.  Tenant initial here: _____

12.  Tenant has tested all of the smoke detectors and agrees that they are in working order. Tenant is responsible for keeping the smoke detectors in working order i.e., replacing the batteries when necessary and advising the landlord of any malfunction of the smoke detectors.  Tenant initial here _____

13.  By signing this lease, tenant waives the 10-day notice to vacate premises. Tenant initial here _____

14.  Tenant is required to show verification of a Tenant Insurance Policy from an Insurance Company.

IF TENANT CHOOSES TO CIRCUMVENT ANY PART OF THIS LEASE AT ANY TIME, TENANT WILL BE ASKED TO LEAVE THE PREMISES IMMEDIATELY.  -----------------
-------------------------------------------------------------------------------------

Signed:

*Godina Jones*
Godina Jones, Tenant

Date: 1 - 14·05

_____
Pinecastle Realty, LLC, Owner
Managed by Shawn McGrady

Date. 1 - 14 - 05

S,M.

15. _____  Landlord will pay the first $50.00 of the monthly water and sewage bill. The tenant is responsible for balance over $50.00

# LEASE AGREEMENT



**This agreement dated** _____January 16, 2005_____ **is by and between**

_Pinecastle Realty LLC_____ **herein after called "Lessor" and**

_Godina Jones Jett_____ **herein after called "Tenant"**

**for the unit located at** _519 McClintock Ave., Pittsburgh, PA  15214_

**Under the following conditions:**

**1.     TERM**

   a.**The initial term of this agreement shall be for** _Eleven and a Half (11.5) Months_

   **beginning on** _____January 16, 2005_____ **and ending on**

   _____December 31, 2005_____ **for the total sum of  $** _$6,210.00_ .

   b.**Upon the expiration of the initial term, this agreement shall automatically renew for successive month-to-month terms.**

**2.     RENT PAYMENT**

   a.**The tenant shall pay the Lessor as rent for the leased premises in monthly installments in advance without demand at**

   _210 Pinecastle Rd., Pittsburgh, PA  15206_

   b.**From the beginning of the term the sum of  $** _$540.00_ **in advance thereafter during the term of any renewal thereof, until the whole amount of said rent is paid.**

## 3. UTILITIES AND APPLIANCES

a. The landlord shall provide the utilities listed in the column below for the dwelling unit without any additional charge to the Tenant. The cost of these utilities is included in the contract rent The utilities listed in the column below that are not included in the contract rent are to be paid by the tenant.

| Utility | Type | Owner/ Tenant  Responsible for Payment |
|---|---|---|
| Heating | Natural Gas | Tenant |
| Cooking Heat | Natural Gas | Tenant |
| Lights | | Tenant |
| Water Heating | Natural Gas | Tenant |
| Water | | Tenant |
| Sewage | | Landlord |
| Other | | Tenant |

b.)1. The range for the dwelling unit shall be provided by the ___Tenant___
(specify Landlord or Tenant, unspecified shall be provided by Landlord.)

b.)2. The refrigerator for the dwelling unit shall be provided by the ___Tenant___
(specify Landlord or Tenant, unspecified shall be provided by Landlord).

## 4. LESSOR  RESPONSIBILITIES  The Lessor shall:

1. Comply with all State, County and /or Municipal Building, Fire Prevention Housing and Health Department Codes applicable to the Lessor.
2. Maintain the unit in accordance with Housing Quality Standards (HQS), including performance of ordinary and extraordinary maintenance, unless otherwise stated in Additional Provisions section of this lease.

## 5. TENANT RESPONSIBILITIES  The Tenant Shall:

1. Comply with all State, County, and /or Municipal Building, Fire Prevention, Housing and Health Department codes applicable to the tenant.
2. Maintain and keep the premises during the term in good repair and agree to pay for repairs of any damages they or their guests have caused.
3. Make no additions or alterations without prior consent of the lessor.
4. Not sublet any part of the premises nor assign this agreement to anyone else
5. Not lawfully occupy the premises after the end of the term. If the tenant continues to occupy the premises after the end of the term, the tenant shall be directly responsible for for all rent due and payable to the Owner of the premises.

6. **SECURITY DEPOSIT**

The tenant has paid a security deposit in the amount of $ $780.00
to the Lessor, for damages, unpaid rent and/or any other charges due under the
lease.

7. **ADDITIONAL PROVISIONS (IF ANY)**

n/a

8. **LEASE ADDENDUM**

The attached Lease Addendum and Prohibited Lease Provisions are incorporated
herein and made a part of this lease.

**ACKNOWLEDGEMENT**

All parties hereby acknowledge that they have read this Agreement and understand it and
agree to it.

WITNESS:

_____ (Seal)
**(Lessor)**

3-24-05
_____ (Seal)
**(Date)**

Godena    Janes Jett
_____ (Seal)
**(Tenant)**

3-24-05
_____ (Seal)
**(Date)**



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
**SECTION 8 HOUSING VOUCHER PROGRAM**

**AGENCY DETERMINATION WITH RESPECT TO REQUEST FOR LEASE APPROVAL**
**(To be sent to the Owner and Family)**

Check
applicable
item

Contract #  205548123

___X___ 1.  Approval:  The Agency hereby approves the proposed lease between

(family) Godina Jones Jett

(owner) Pinecastle Realty LLC

unit located at  519 McClintock Ave., Pittsburgh, PA  15214

(Street address and apartment, if any)

a.  Enclosed is the proposed lease, which has been completed by the Agency with respect to the portion of the monthly lease rental which the Family shall be obligated to pay to the Owner. The lease shall be executed by the Family and the Owner and a copy returned to the Agency.

b.  Also enclosed are three copies of a Housing Voucher Contract completed by the Agency except for execution. The Owner shall sign all copies of the Contract and return them to the Agency. The Agency will execute the Contract by the first day of occupancy specified in the Lease and will immediately return an executed copy to the Owner.

_____ 2.  Disapproval:  The proposed Lease and/or Dwelling Unit are/is disapproved for the following reasons:

_____ 3.  Resubmission:  If the conditions in item 2 above have been remedied, and a Request for Lease Approval is resubmitted by the Owner and the Family to the Agency by _____ (date) the Lease will be approved by the Agency if it is determined that the conditions have been remedied to its satisfaction.

(The Housing Voucher issued to the Family shall not expire before said date.)

PITTSBURGH HOUSING AUTHORITY
(Name of Public Housing Agency)

By: _____

(Signature and Title) Asst. Dir.

412-456-5137

_____          (Telephone)
(Date)

# Housing Assistance Payments Contract (HAP Contract)
## Section 8 Tenant-Based Assistance
## Housing Choice Voucher Program

**U.S. Department of Housing and Urban Development**
Office of Public and Indian Housing

---

## Part A of the HAP Contract:  Contract Information

(To prepare the contract, fill out all contract information in Part A.)

1.  **Contents of Contract**
    This HAP contract has three parts:
    Part A:  Contract Information
    Part B:  Body of Contract
    Part C:  Tenancy Addendum

2.  **Tenant**

    Godina Jett

3.  **Contract Unit**

    519 McClintock St
    Pittsburgh, PA  15212

4.  **Household**

    The following persons may reside in the unit.  Other persons may not be added to the household without prior written approval of the owner and the PHA.

    Lakeisha M Jett

    Darron L Jett

    Darronda R Jett

5.  **Initial Lease Term**
    The initial lease term  begins on (mm/dd/yyyy):      01/16/2005
    The initial lease term ends on (mm/dd/yyyy):        12/31/2005

6.  **Initial Rent to Owner**
    The initial rent to owner is: $  540.00
    During the initial lease term, the owner may not raise the rent to owner.

7.  **Initial Housing Assistance Payment**
    The HAP contract term commences on the first day of the initial lease term.  At the beginning of the HAP contract term, the amount of the housing assistance payment by the PHA to the owner is  $  300.00         per month.
    The amount of the monthly housing assistance payment by the PHA to the owner is subject to change during the HAP contract term in accordance with HUD requirements.

---

## 8.  Utilities and Appliances

The owner shall provide or pay for the utilities and appliances indicated below by an "O". The tenant shall provide or pay for the utilities and appliances indicated below by a "T".  Unless otherwise specified below, the owner shall pay for all utilities and appliances provided by the owner.

| Item | Specify fuel type | | | | Provided by | Paid by |
|------|-------------------|---|---|---|-------------|---------|
| Heating | [X] Natural gas | [ ] Bottle gas | [ ] Oil or Electric | [ ] Coal or Other | Tenant | Tenant |
| Cooking | [X] Natural gas | [ ] Bottle gas | [ ] Oil or Electric | [ ] Coal or Other | Tenant | Tenant |
| Water Heating | [X] Natural gas | [ ] Bottle gas | [ ] Oil or Electric | [ ] Coal or Other | Tenant | Tenant |
| Other Electric | | | | | Tenant | Tenant |
| Water | | | | | Tenant | Tenant |
| Sewer | | | | | Landlord | Landlord |
| Trash Collection | | | | | | |
| Air Conditioning | | | | | | |
| Refrigerator | | | | | Tenant | Tenant |
| Range/Microwave | | | | | Tenant | Tenant |
| Other (specify) | | | | | Tenant | Tenant |

**Signatures:**

**Public Housing Agency**

Housing Authority of the City of Pittsburgh
_____
Print or Type Name of PHA

_____
Signature

Robert Zak, Section 8 Director
_____
Print or Type Name and Title of Signatory

_____
Date (mm/dd/yyyy)

**Owner**

Pinecastle Realty LLC
_____
Print or Type Name of Owner

_____
Signature

SHAWN McGRADY
_____
Print or Type Name and Title of Signatory

3-24-05
_____
Date (mm/dd/yyyy)

**Mail Payments to:**

Pinecastle Realty LLC
_____
Name

210 Pinecastle Rd., Pittsburgh, PA  15206
_____
Address (street, city, State, Zip)

# Housing Assistance Payments Contract (HAP) Contract
## Section 8 Tenant-Based Assistance
## Housing Choice Voucher Program

**U.S. Department of Housing
and Urban Development**
Office of Public and Indian Housing

## Part B of HAP Contract: Body of Contract

1. **Purpose**

   a. This is a HAP contract between the PHA and the owner. The HAP contract is entered to provide assistance for the family under the Section 8 voucher program (see HUD program regulations at 24 Code of Federal Regulations Part 982).

   b. The HAP contract only applies to the household and contract unit specified in Part A of the HAP contract.

   c. During the HAP contract term, the PHA will pay housing assistance payments to the owner in accordance with the HAP contract.

   d. The family will reside in the contract unit with assistance under the Section 8 voucher program. The housing assistance payments by the PHA assist the tenant to lease the contract unit from the owner for occupancy by the family.

2. **Lease of Contract Unit**

   a. The owner has leased the contract unit to the tenant for occupancy by the family with assistance under the Section 8 voucher program.

   b. The PHA has approved leasing of the unit in accordance with requirements of the Section 8 voucher program.

   c. The lease for the contract unit must include word-for-word all provisions of the tenancy addendum required by HUD (Part C of the HAP contract).

   d. The owner certifies that:

   (1) The owner and the tenant have entered into a lease of the contract unit that includes all provisions of the tenancy addendum.

   (2) The lease is in a standard form that is used in the locality by the owner and that is generally used for other unassisted tenants in the premises.

   (3) The lease is consistent with State and local law.

   e. The owner is responsible for screening the family's behavior or suitability for tenancy. The PHA is not responsible for such screening. The PHA has no liability or responsibility to the owner or other persons for the family's behavior or the family's conduct in tenancy.

3. **Maintenance, Utilities, and Other Services**

   a. The owner must maintain the contract unit and premises in accordance with the housing quality standards (HQS).

   b. The owner must provide all utilities needed to comply with the HQS.

   c. If the owner does not maintain the contract unit in accordance with the HQS, or fails to provide all utilities needed to comply with the HQS, the PHA may exercise any available remedies. PHA remedies for such breach include recovery of overpayments, suspension of hous-

ing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract. The PHA may not exercise such remedies against the owner because of an HQS breach for which the family is responsible, and that is not caused by the owner.

   d. The PHA shall not make any housing assistance payments if the contract unit does not meet the HQS, unless the owner corrects the defect within the period specified by the PHA and the PHA verifies the correction. If a defect is life threatening, the owner must correct the defect within no more than 24 hours. For other defects, the owner must correct the defect within the period specified by the PHA.

   e. The PHA may inspect the contract unit and premises at such times as the PHA determines necessary, to ensure that the unit is in accordance with the HQS.

   f. The PHA must notify the owner of any HQS defects shown by the inspection.

   g. The owner must provide all housing services as agreed to in the lease.

4. **Term of HAP Contract**

   a. **Relation to lease term.** The term of the HAP contract begins on the first day of the initial term of the lease, and terminates on the last day of the term of the lease (including the initial lease term and any extensions).

   b. **When HAP contract terminates.**

   (1) The HAP contract terminates automatically if the lease is terminated by the owner or the tenant.

   (2) The PHA may terminate program assistance for the family for any grounds authorized in accordance with HUD requirements. If the PHA terminates program assistance for the family, the HAP contract terminates automatically.

   (3) If the family moves from the contract unit, the HAP contract terminates automatically.

   (4) The HAP contract terminates automatically 180 calendar days after the last housing assistance payment to the owner.

   (5) The PHA may terminate the HAP contract if the PHA determines, in accordance with HUD requirements, that available program funding is not sufficient to support continued assistance for families in the program.

(6) The PHA may terminate the HAP contract if the PHA determines that the contract unit does not provide adequate space in accordance with the HQS because of an increase in family size or a change in family composition.

(7) If the family breaks up, the PHA may terminate the HAP contract, or may continue housing assistance payments on behalf of family members who remain in the contract unit.

(8) The PHA may terminate the HAP contract if the PHA determines that the unit does not meet all requirements of the HQS, or determines that the owner has otherwise breached the HAP contract.

## 5. Provision and Payment for Utilities and Appliances

a. The lease must specify what utilities are to be provided or paid by the owner or the tenant.

b. The lease must specify what appliances are to be provided or paid by the owner or the tenant.

c. Part A of the HAP contract specifies what utilities and appliances are to be provided or paid by the owner or the tenant. The lease shall be consistent with the HAP contract.

## 6. Rent to Owner: Reasonable Rent

a. During the HAP contract term, the rent to owner may at no time exceed the reasonable rent for the contract unit as most recently determined or redetermined by the PHA in accordance with HUD requirements.

b. The PHA must determine whether the rent to owner is reasonable in comparison to rent for other comparable unassisted units. To make this determination, the PHA must consider:

(1) The location, quality, size, unit type, and age of the contract unit; and

(2) Any amenities, housing services, maintenance and utilities provided and paid by the owner.

c. The PHA must redetermine the reasonable rent when required in accordance with HUD requirements. The PHA may redetermine the reasonable rent at any time.

d. During the HAP contract term, the rent to owner may not exceed rent charged by the owner for comparable unassisted units in the premises. The owner must give the PHA any information requested by the PHA on rents charged by the owner for other units in the premises or elsewhere.

## 7. PHA Payment to Owner

a. **When paid**

(1) During the term of the HAP contract, the PHA must make monthly housing assistance payments to the owner on behalf of the family at the beginning of each month.

(2) The PHA must pay housing assistance payments promptly when due to the owner.

(3) If housing assistance payments are not paid promptly when due after the first two calendar months of the HAP contract term , the PHA shall pay the owner

penalties in accordance with generally accepted practices and law, as applicable in the local housing market, governing penalties for late payment by a tenant. However, the PHA shall not be obligated to pay any late payment penalty if HUD determines that late payment by the PHA is due to factors beyond the PHA's control. Moreover, the PHA shall not be obligated to pay any late payment penalty if housing assistance payments by the PHA are delayed or denied as a remedy for owner breach of the HAP contract (including any of the following PHA remedies: recovery of overpayments, suspension of housing assistance payments, abatement or reduction of housing assistance payments, termination of housing assistance payments, termination of housing assistance payments and termination of the contract).

(4) Housing assistance payments shall only be paid to the owner while the family is residing in the contract unit during the term of the HAP contract. The PHA shall not pay a housing assistance payment to the owner for any month after the month when the family moves out.

b. **Owner compliance with HAP contract**. Unless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract.

c. **Amount of PHA payment to owner**

(1) The amount of the monthly PHA housing assistance payment to the owner shall be determined by the PHA in accordance with HUD requirements for a tenancy under the voucher program.

(2) The amount of the PHA housing assistance payment is subject to change during the HAP contract term in accordance with HUD requirements. The PHA must notify the family and the owner of any changes in the amount of the housing assistance payment.

(3) The housing assistance payment for the first month of the HAP contract term shall be pro-rated for a partial month.

d. **Application of payment**. The monthly housing assistance payment shall be credited against the monthly rent to owner for the contract unit.

e. **Limit of PHA responsibility.**

(1) The PHA is only responsible for making housing assistance payments to the owner in accordance with the HAP contract and HUD requirements for a tenancy under the voucher program.

(2) The PHA shall not pay any portion of the rent to owner in excess of the housing assistance payment. The PHA shall not pay any other claim by the owner against the family.

f. **Overpayment to owner.** If the PHA determines that the owner is not entitled to the housing assistance payment or any part of it, the PHA, in addition to other remedies, may deduct the amount of the overpayment from any amounts due the owner (including amounts due under any other Section 8 assistance contract).

# Housing Assistance Payments Contract (HAP Contract)
## Section 8 Tenant-Based Assistance
## Housing Choice Voucher Program

**U.S. Department of Housing and Urban Development**
Office of Public and Indian Housing

## Instructions for use of HAP Contract

This form of Housing Assistance Payments Contract (HAP contract) is used to provide Section 8 tenant-based assistance under the housing choice voucher program (voucher program) of the U.S. Department of Housing and Urban Development (HUD). The main regulation for this program is 24 Code of Federal Regulations Part 982.

The local voucher program is administered by a public housing agency (PHA). The HAP contract is an agreement between the PHA and the owner of a unit occupied by an assisted family. The HAP contract has three parts:

> Part A Contract information (fill-ins).
> See section by section instructions.

> Part B Body of contract

> Part C Tenancy addendum

### Use of this form

Use of this HAP contract is required by HUD. Modification of the HAP contract is not permitted. The HAP contract must be word-for-word in the form prescribed by HUD.

However, the PHA may choose to add the following:

> Language that prohibits the owner from collecting a security deposit in excess of private market practice, or in excess of amounts charged by the owner to unassisted tenants. Such a prohibition must be added to Part A of the HAP contract.

> Language that defines when the housing assistance payment by the PHA is deemed received by the owner (e.g., upon mailing by the PHA or actual receipt by the owner). Such language must be added to Part A of the HAP contract.

To prepare the HAP contract, fill in all contract information in Part A of the contract. Part A must then be executed by the owner and the PHA.

### Use for special housing types

In addition to use for the basic Section 8 voucher program, this form must also be used for the following "special housing types" which are voucher program variants for special needs (see 24 CFR Part 982, Subpart M): (1) single room occupancy (SRO) housing; (2) congregate housing; (3) group home; (4) shared housing; and (5) manufactured home rental by a family that leases the manufactured home and space. When this form is used for a special housing type, the special housing type shall be specified in Part A of the HAP contract, as follows: "This HAP contract is used for the following special housing type under HUD regulations for the Section 8 voucher program: (Insert Name of Special Housing type)."

However, this form may not be used for the following special housing types: (1) manufactured home space rental by a family that owns the manufactured home and leases only the space; (2) cooperative housing; and (3) the homeownership option under Section 8(y) of the United States Housing Act of 1937 (42 U.S.C. 1437f(y)).

## How to fill in Part A

### Section by Section Instructions

**Section 2: Tenant**

Enter full name of tenant.

**Section 3. Contract Unit**

Enter address of unit, including apartment number, if any.

**Section 4. Household Members**

Enter full names of all PHA-approved household members. Specify if any such person is a live-in aide, which is a person approved by the PHA to reside in the unit to provide supportive services for a family member who is a person with disabilities.

**Section 5. Initial Lease Term**

Enter first date and last date of initial lease term.

The initial lease term must be for at least one year. However, the PHA may approve a shorter initial lease term if the PHA determines that:

> o   Such shorter term would improve housing opportunities for the tenant, **and**

> o   Such shorter term is the prevailing local market practice.

**Section 6. Initial Rent to Owner**

Enter the amount of the monthly rent to owner during the initial lease term. The PHA must determine that the rent to owner is reasonable in comparison to rent for other comparable unassisted units. During the initial lease term, the owner may not raise the rent to owner.

**Section 7. Housing Assistance Payment**

Enter the initial amount of the monthly housing assistance payment.

**Section 8. Utilities and Appliances**

The lease and the HAP contract must specify what utilities and appliances are to be supplied by the owner, and what utilities and appliances are to be supplied by the tenant. Fill in section 8 to show who is responsible to provide or pay for utilities and appliances.

8. **Owner Certification**

During the term of this contract, the owner certifies that:

a. The owner is maintaining the contract unit and premises in accordance with the HQS.

b. The contract unit is leased to the tenant. The lease includes the tenancy addendum (Part C of the HAP contract), and is in accordance with the HAP contract and program requirements. The owner has provided the lease to the PHA, including any revisions of the lease.

c. The rent to owner does not exceed rents charged by the owner for rental of comparable unassisted units in the premises.

d. Except for the rent to owner, the owner has not received and will not receive any payments or other consideration (from the family, the PHA, HUD, or any other public or private source) for rental of the contract unit during the HAP contract term.

e. The family does not own or have any interest in the contract unit.

f. To the best of the owner's knowledge, the members of the family reside in the contract unit, and the unit is the family's only residence.

g. The owner (including a principal or other interested party) is not the parent, child, grandparent, grandchild, sister, or brother of any member of the family, unless the PHA has determined (and has notified the owner and the family of such determination) that approving rental of the unit, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.

9. **Prohibition of Discrimination.** In accordance with applicable equal opportunity statutes, Executive Orders, and regulations:

a. The owner must not discriminate against any person because of race, color, religion, sex, national origin, age, familial status, or disability in connection with the HAP contract.

b. The owner must cooperate with the PHA and HUD in conducting equal opportunity compliance reviews and complaint investigations in connection with the HAP contract.

10. **Owner's Breach of HAP Contract**

a. Any of the following actions by the owner (including a principal or other interested party) is a breach of the HAP contract by the owner:

(1) If the owner has violated any obligation under the HAP contract, including the owner's obligation to maintain the unit in accordance with the HQS.

(2) If the owner has violated any obligation under any other housing assistance payments contract under Section 8.

(3) If the owner has committed fraud, bribery or any other corrupt or criminal act in connection with any Federal housing assistance program.

(4) For projects with mortgages insured by HUD or loans made by HUD, if the owner has failed to comply with the regulations for the applicable mortgage insurance or loan program, with the mortgage or mortgage note, or with the regulatory agreement; or if the owner has committed fraud, bribery or any other corrupt or criminal act in connection with the mortgage or loan.

(5) If the owner has engaged in any drug-related criminal activity or any violent criminal activity.

b. If the PHA determines that a breach has occurred, the PHA may exercise any of its rights and remedies under the HAP contract, or any other available rights and remedies for such breach. The PHA shall notify the owner of such determination, including a brief statement of the reasons for the determination. The notice by the PHA to the owner may require the owner to take corrective action, as verified or determined by the PHA, by a deadline prescribed in the notice.

c. The PHA's rights and remedies for owner breach of the HAP contract include recovery of overpayments, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract.

d. The PHA may seek and obtain additional relief by judicial order or action, including specific performance, other injunctive relief or order for damages.

e. Even if the family continues to live in the contract unit, the PHA may exercise any rights and remedies for owner breach of the HAP contract.

f. The PHA's exercise or non-exercise of any right or remedy for owner breach of the HAP contract is not a waiver of the right to exercise that or any other right or remedy at any time.

11. **PHA and HUD Access to Premises and Owner's Records**

a. The owner must provide any information pertinent to the HAP contract that the PHA or HUD may reasonably require.

b. The PHA, HUD and the Comptroller General of the United States shall have full and free access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract, including the right to examine or audit the records and to make copies.

c. The owner must grant such access to computerized or other electronic records, and to any computers, equipment or facilities containing such records, and must provide any information or assistance needed to access the records.

12. **Exclusion of Third Party Rights**

a. The family is not a party to or third party beneficiary of Part B of the HAP contract. The family may not enforce any provision of Part B, and may not exercise any right or remedy against the owner or PHA under Part B.

b. The tenant or the PHA may enforce the tenancy addendum (Part C of the HAP contract) against the owner, and may exercise any right or remedy against the owner under the tenancy addendum.

c. The PHA does not assume any responsibility for injury to, or any liability to, any person injured as a result of the owner's action or failure to act in connection with management of the contract unit or the premises or with implementation of the HAP contract, or as a result of any other action or failure to act by the owner.

d. The owner is not the agent of the PHA, and the HAP contract does not create or affect any relationship between the PHA and any lender to the owner or any suppliers, employees, contractors or subcontractors used by the owner in connection with management of the contract unit or the premises or with implementation of the HAP contract.

13. **Conflict of Interest**

a. "Covered individual" means a person or entity who is a member of any of the following classes:

(1) Any present or former member or officer of the PHA (except a PHA commissioner who is a participant in the program);

(2) Any employee of the PHA, or any contractor, subcontractor or agent of the PHA, who formulates policy or who influences decisions with respect to the program;

(3) Any public official, member of a governing body, or State or local legislator, who exercises functions or responsibilities with respect to the program; or

(4) Any member of the Congress of the United States.

b. A covered individual may not have any direct or indirect interest in the HAP contract or in any benefits or payments under the contract (including the interest of an immediate family member of such covered individual) while such person is a covered individual or during one year thereafter.

c. "Immediate family member" means the spouse, parent (including a stepparent), child (including a stepchild), grandparent, grandchild, sister or brother (including a stepsister or stepbrother) of any covered individual.

d. The owner certifies and is responsible for assuring that no person or entity has or will have a prohibited interest, at execution of the HAP contract, or at any time during the HAP contract term.

e. If a prohibited interest occurs, the owner shall promptly and fully disclose such interest to the PHA and HUD.

f. The conflict of interest prohibition under this section may be waived by the HUD field office for good cause.

g. No member of or delegate to the Congress of the United States or resident commissioner shall be admitted to any share or part of the HAP contract or to any benefits which may arise from it.

14. **Assignment of the HAP Contract**

a. The owner may not assign the HAP contract to a new owner without the prior written consent of the PHA.

b. If the owner requests PHA consent to assign the HAP contract to a new owner, the owner shall supply any information as required by the PHA pertinent to the proposed assignment.

c. The HAP contract may not be assigned to a new owner that is debarred, suspended or subject to a limited denial of participation under HUD regulations (see 24 Code of Federal Regulations Part 24).

d. The HAP contract may not be assigned to a new owner if HUD has prohibited such assignment because:

(1) The Federal government has instituted an administrative or judicial action against the owner or proposed new owner for violation of the Fair Housing Act or other Federal equal opportunity requirements, and such action is pending; or

(2) A court or administrative agency has determined that the owner or proposed new owner violated the Fair Housing Act or other Federal equal opportunity requirements.

e. The HAP contract may not be assigned to a new owner if the new owner (including a principal or other interested party) is the parent, child, grandparent, grandchild, sister or brother of any member of the family, unless the PHA has determined (and has notified the family of such determination) that approving the assignment, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.

f. The PHA may deny approval to assign the HAP contract if the owner or proposed new owner (including a principal or other interested party):

(1) Has violated obligations under a housing assistance payments contract under Section 8;

(2) Has committed fraud, bribery or any other corrupt or criminal act in connection with any Federal housing program;

(3) Has engaged in any drug-related criminal activity or any violent criminal activity;

(4) Has a history or practice of non-compliance with the HQS for units leased under the Section 8 tenant-based programs, or non-compliance with applicable housing standards for units leased with project-based Section 8 assistance or for units leased under any other Federal housing program;

(5) Has a history or practice of failing to terminate tenancy of tenants assisted under any Federally assisted housing program for activity engaged in by the tenant, any member of the household, a guest or another person under the control of any member of the household that:

(a) Threatens the right to peaceful enjoyment of the premises by other residents;

(b) Threatens the health or safety of other residents, of employees of the PHA, or of owner employees or other persons engaged in management of the housing;

(c) Threatens the health or safety of, or the right to peaceful enjoyment of their residents by, persons residing in the immediate vicinity of the premises; or

(d) Is drug-related criminal activity or violent criminal activity;

(6) Has a history or practice of renting units that fail to meet State or local housing codes; or

(7) Has not paid State or local real estate taxes, fines or assessments.

g. The new owner must agree to be bound by and comply with the HAP contract. The agreement must be in writing, and in a form acceptable to the PHA. The new owner must give the PHA a copy of the executed agreement.

15. **Written Notices.**  Any notice by the PHA or the owner in connection with this contract must be in writing.

16. **Entire Agreement: Interpretation**

a. The HAP contract contains the entire agreement between the owner and the PHA.

b. The HAP contract shall be interpreted and implemented in accordance with HUD requirements, including the HUD program regulations at 24 Code of Federal Regulations Part 982.

**Housing Assistance Payments Contract (HAP Contract)**
**Section 8 Tenant-Based Assistance**
**Housing Choice Voucher Program**

**EXHIBIT**
**D**

PENGAD-Bayonne, N. J.

**U.S. Department of Housing and Urban Development**
Office of Public and Indian Housing

## Part C of HAP Contract: Tenancy Addendum

**1.   Section 8 Voucher Program**

   a.   The owner is leasing the contract unit to the tenant for occupancy by the tenant's family with assistance for a tenancy under the Section 8 housing choice voucher program (voucher program) of the United States Department of Housing and Urban Development (HUD).

   b.   The owner has entered into a Housing Assistance Payments Contract (HAP contract) with the PHA under the voucher program. Under the HAP contract, the PHA will make housing assistance payments to the owner to assist the tenant in leasing the unit from the owner.

**2.   Lease**

   a.   The owner has given the PHA a copy of the lease, including any revisions agreed by the owner and the tenant. The owner certifies that the terms of the lease are in accordance with all provisions of the HAP contract and that the lease includes the tenancy addendum.

   b.   The tenant shall have the right to enforce the tenancy addendum against the owner. If there is any conflict between the tenancy addendum and any other provisions of the lease, the language of the tenancy addendum shall control.

**3.   Use of Contract Unit**

   a.   During the lease term, the family will reside in the contract unit with assistance under the voucher program.

   b.   The composition of the household must be approved by the PHA. The family must promptly inform the PHA of the birth, adoption or court-awarded custody of a child. Other persons may not be added to the household without prior written approval of the owner and the PHA.

   c.   The contract unit may only be used for residence by the PHA-approved household members. The unit must be the family's only residence. Members of the household may engage in legal profitmaking activities incidental to primary use of the unit for residence by members of the family.

   d.   The tenant may not sublease or let the unit.

   e.   The tenant may not assign the lease or transfer the unit.

**4.   Rent to Owner**

   a.   The initial rent to owner may not exceed the amount approved by the PHA in accordance with HUD requirements.

   b.   Changes in the rent to owner shall be determined by the provisions of the lease. However, the owner may not raise the rent during the initial term of the lease.

   c.   During the term of the lease (including the initial term of the lease and any extension term), the rent to owner may at no time exceed:

     (1)   The reasonable rent for the unit as most recently determined or redetermined by the PHA in accordance with HUD requirements, or

     (2)   Rent charged by the owner for comparable unassisted units in the premises.

**5.   Family Payment to Owner**

   a.   The family is responsible for paying the owner any portion of the rent to owner that is not covered by the PHA housing assistance payment.

   b.   Each month, the PHA will make a housing assistance payment to the owner on behalf of the family in accordance with the HAP contract. The amount of the monthly housing assistance payment will be determined by the PHA in accordance with HUD requirements for a tenancy under the Section 8 voucher program.

   c.   The monthly housing assistance payment shall be credited against the monthly rent to owner for the contract unit.

   d.   The tenant is not responsible for paying the portion of rent to owner covered by the PHA housing assistance payment under the HAP contract between the owner and the PHA. A PHA failure to pay the housing assistance payment to the owner is not a violation of the lease. The owner may not terminate the tenancy for nonpayment of the PHA housing assistance payment.

   e.   The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to owner. Rent to owner includes all housing services, maintenance, utilities and appliances to be provided and paid by the owner in accordance with the lease.

   f.   The owner must immediately return any excess rent payment to the tenant.

**6.   Other Fees and Charges**

   a.   Rent to owner does not include cost of any meals or supportive services or furniture which may be provided by the owner.

   b.   The owner may not require the tenant or family members to pay charges for any meals or supportive services or furniture which may be provided by the owner. Nonpayment of any such charges is not grounds for termination of tenancy.

   c.   The owner may not charge the tenant extra amounts for items customarily included in rent to owner in the locality, or provided at no additional cost to unsubsidized tenants in the premises.

**7.   Maintenance, Utilities, and Other Services**

   **a.   Maintenance**

     (1)   The owner must maintain the unit and premises in accordance with the HQS.

     (2)   Maintenance and replacement (including redecoration) must be in accordance with the standard practice for the building concerned as established by the owner.

**11. Family Move Out**

The tenant must notify the PHA and the owner before the family moves out of the unit.

**12. Security Deposit**

a. The owner may collect a security deposit from the tenant. (However, the PHA may prohibit the owner from collecting a security deposit in excess of private market practice, or in excess of amounts charged by the owner to unassisted tenants. Any such PHA-required restriction must be specified in the HAP contract.)

b. When the family moves out of the contract unit, the owner, subject to State and local law, may use the security deposit, including any interest on the deposit, as reimbursement for any unpaid rent payable by the tenant, any damages to the unit or any other amounts that the tenant owes under the lease.

c. The owner must give the tenant a list of all items charged against the security deposit, and the amount of each item. After deducting the amount, if any, used to reimburse the owner, the owner must promptly refund the full amount of the unused balance to the tenant.

d. If the security deposit is not sufficient to cover amounts the tenant owes under the lease, the owner may collect the balance from the tenant.

**13. Prohibition of Discrimination**

In accordance with applicable equal opportunity statutes, Executive Orders, and regulations, the owner must not discriminate against any person because of race, color, religion, sex, national origin, age, familial status or disability in connection with the lease.

**14. Conflict with Other Provisions of Lease**

a. The terms of the tenancy addendum are prescribed by HUD in accordance with Federal law and regulation, as a condition for Federal assistance to the tenant and tenant's family under the Section 8 voucher program.

b. In case of any conflict between the provisions of the tenancy addendum as required by HUD, and any other provisions of the lease or any other agreement between the owner and the tenant, the requirements of the HUD-required tenancy addendum shall control.

**15. Changes in Lease or Rent**

a. The tenant and the owner may not make any change in the tenancy addendum. However, if the tenant and the owner agree to any other changes in the lease, such changes must be in writing, and the owner must immediately give the PHA a copy of such changes. The lease, including any changes, must be in accordance with the requirements of the tenancy addendum.

b. In the following cases, tenant-based assistance shall not be continued unless the PHA has approved a new tenancy in accordance with program requirements and has executed a new HAP contract with the owner:

(1) If there are any changes in lease requirements governing tenant or owner responsibilities for utilities or appliances;

(2) If there are any changes in lease provisions governing the term of the lease;

(3) If the family moves to a new unit, even if the unit is in the same building or complex.

c. PHA approval of the tenancy, and execution of a new HAP contract, are not required for agreed changes in the lease other than as specified in paragraph b.

d. The owner must notify the PHA of any changes in the amount of the rent to owner at least sixty days before any such changes go into effect, and the amount of the rent to owner following any such agreed change may not exceed the reasonable rent for the unit as most recently determined or redetermined by the PHA in accordance with HUD requirements.

**16. Notices**

Any notice under the lease by the tenant to the owner or by the owner to the tenant must be in writing.

**17. Definitions**

**Contract unit.** The housing unit rented by the tenant with assistance under the program.

**Family.** The persons who may reside in the unit with assistance under the program.

**HAP contract.** The housing assistance payments contract between the PHA and the owner. The PHA pays housing assistance payments to the owner in accordance with the HAP contract.

**Household.** The persons who may reside in the contract unit. The household consists of the family and any PHA-approved live-in aide. (A live-in aide is a person who resides in the unit to provide necessary supportive services for a member of the family who is a person with disabilities.)

**Housing quality standards** (HQS). The HUD minimum quality standards for housing assisted under the Section 8 tenant-based programs.

**HUD.** The U.S. Department of Housing and Urban Development.

**HUD requirements.** HUD requirements for the Section 8 program. HUD requirements are issued by HUD headquarters, as regulations, Federal Register notices or other binding program directives.

**Lease.** The written agreement between the owner and the tenant for the lease of the contract unit to the tenant. The lease includes the tenancy addendum prescribed by HUD.

**PHA.** Public Housing Agency.

**Premises.** The building or complex in which the contract unit is located, including common areas and grounds.

**Program.** The Section 8 housing choice voucher program.

**Rent to owner.** The total monthly rent payable to the owner for the contract unit. The rent to owner is the sum of the portion of rent payable by the tenant plus the PHA housing assistance payment to the owner.

**Section 8.** Section 8 of the United States Housing Act of 1937 (42 United States Code 1437f).

**Tenant.** The family member (or members) who leases the unit from the owner.

**Voucher program.** The Section 8 housing choice voucher program. Under this program, HUD provides funds to a PHA for rent subsidy on behalf of eligible families. The tenancy under the lease will be assisted with rent subsidy for a tenancy under the voucher program.

# Housing Authority of the City of Pittsburgh

Section 8 Department
200 Ross Street – 7th Floor
Pittsburgh, PA  15219
(412) 456-5090  Fax:  (412) 456-5224
www.hacp.org

## NOTIFICATION OF RENT

Godina Watt
519 McLintock Ave.
Pgh, PA 15214

EXHIBIT
E

Date: _____ 1-18-05 _____

Dear _____ Godina _____:

The Housing Authority City of Pittsburgh has approved your Section 8 assistance for the property located at:

_____ 519    McLintock _____

Effective _____ 1-16-05 _____ your portion of the rent has been calculated to be

$ _____ 240 _____ per month

In addition, the following amounts are applicable to your tenancy as listed above:

Security deposit paid by Tenant          $ _____ 780 _____

Rent to Owner (total unit rent)          $ _____ 540 _____

Assistance Paid by Housing Authority     $ _____ 300 _____

This notice has been provided in accordance with the U.S. Department of Housing and Urban Development (HUD) regulations.  Please contact our office if you have questions pertaining to your rental calculation.  If you disagree with the amount of your new rent payment you may request an informal hearing.  If a hearing is desired, you must submit a written request to this office within fifteen (15) calendar days of this notice or you will lose your right to a hearing.

Please keep in mind that any changes in your family income and /or composition must be promptly reported to this office.  Once reported, appropriate adjustments will be made.

If you have questions regarding this notification, please contact me at 412-456-5146.

Sincerely,

William Wivell
Housing Inspector

07/15/05  FRI 14:59 FAX

Case 2:05-cv-01052-DSC   Document 1-2   Filed 07/29/05   Page 35 of 37

☑002

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF: **ALLEGHENY**

# LANDLORD AND TENANT COMPLAINT

Mag. Dist. No.:
**05-2-42**

DJ Name: Hon.
**ROBERT P. RAVENSTAHL, JR.**
Address: **3874 PERRYSVILLE AVENUE**
**PITTSBURGH, PA**          **15214-0000**

Telephone: **(412) 321-0116**

PLAINTIFF: NAME and ADDRESS
Pinecastle Realty LLC
P.O. Box 9607
Pgh PA 15226
Phone #:  412-379-5005

VS.

DEFENDANT: NAME and ADDRESS
Godina Jones
519 McClintock Ave
Pgh PA 15214
Phone #: 410-231-0380

**EXHIBIT E**

| | Amount | Date Paid |
|---|---|---|
| Filing Costs | $ 93.00 | 7/1/05 |
| Postage | $ | / / |
| Service Costs | $ | / / |
| Constable Ed. | $ | / / |
| Total | $ | |

Pa.R.C.P.D.J. No. 206 sets forth those costs recoverable by the prevailing party.

Docket No.: LT 518-05
Date Filed: 7-1-05

TO THE DEFENDANT: The above named plaintiff(s) asks judgment together with costs against you for the possession of real property and for:

Security Deposit: $ 650.00
Rent: $ 650.00

Lease is ☑ Residential ☐ Nonresidential.

☐ Damages for injury to the real property, to wit: _____
_____ in the amount of: $ _____

☐ Damages for the unjust detention of the real property in the amount of $ _____

☑ Rent remaining due and unpaid on filing date in the amount of $ 1020.00

☑ And additional rent remaining due and unpaid on hearing date $ _____

☐ Attorney fees in the amount of $ _____

THE PLAINTIFF FURTHER ALLEGES THAT:                Total: $ 1020.00

1. The location and the address, if any, of the real property is: 519 McClintock Ave 15214
2. The plaintiff is the landlord of that property.
3. He leased or rented the property to you or to _____ under whom you claim.
4. ☐ Notice to quit was given in accordance with law, or
   ☑ No notice is required under the terms of the lease.
5. ☐ The term for which the property was leased or rented is fully ended, or
   ☐ A forfeiture has resulted by reason of a breach of the conditions of the lease, to wit: _____
   _____, or,
   ☑ Rent reserved and due has, upon demand, remained unsatisfied.
6. You retain the real property and refuse to give up its possession.

I, SHAWN McGRADY _____ verify that the facts set forth in this complaint are true and correct to the best of my knowledge, information and belief. This statement is made subject to the penalties of Section 4904 of the Crimes Code (18 PA. C. S. § 4904) relating to unsworn falsification to authorities.

_____ (Signature of Plaintiff)

(Plaintiff's Attorney)          (Address)          (Phone)

IF YOU HAVE A DEFENSE to this complaint you may present it at the hearing. IF YOU HAVE A CLAIM against the plaintiff arising out of the occupancy of the premises, which is in the district justice jurisdiction and which you intend to assert at the hearing, YOU MUST FILE it on a complaint form at this office BEFORE THE TIME set for the hearing.
IF YOU DO NOT APPEAR AT THE HEARING, a judgment for possession and costs, and for damages and rent if claimed, may nevertheless be entered against you.
A judgment against you for possession may result in your EVICTION from the premises.
**If you are disabled and require a reasonable accommodation to gain access to the Magisterial District Court and its services, please contact the Magisterial District Court at the above address or telephone number. We are unable to provide transportation.**
AOPC 310A-03                                        Remarks and summary of testimony may be recorded on reverse side.

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF: **ALLEGHENY**

**NOTICE OF JUDGMENT/TRANSCRIPT**
**RESIDENTIAL LEASE**

Mag. Dist. No.:
**05-2-42**

MDJ Name: Hon.
**ROBERT P. RAVENSTAHL, JR**
Address: **3874 PERRYSVILLE AVE**
**PITTSBURGH, PA**

Telephone: (**412**) **321-0116**     **15214-0000**

PLAINTIFF: NAME AND ADDRESS
**PINECASTLE REALTY**
**PO BOX 9607**
**PGH, PA 15226**

VS.

DEFENDANT: NAME AND ADDRESS
**JONES, GODINA**
**519 MCCLINTOCK AVE**
**PITTSBURGH, PA 15214**

EXHIBIT G

**ROBERT P. RAVENSTAHL, JR**
**3874 PERRYSVILLE AVE**
**PITTSBURGH, PA 15214-0000**

Docket No.: **LT-0000518-05**
Date Filed:  **7/01/05**

**THIS IS TO NOTIFY YOU THAT:**

Judgment:
[X] Judgment was entered for:     (Name)   **FOR PLAINTIFF**
                                          **PINECASTLE REALTY,**
[X] Judgment was entered against   **JONES, GODINA**
Landlord/Tenant action in the amount of $ __**1,113.00**__ on __**7/11/05**__ (Date of Judgment) in a
The amount of rent per month, as established by the Magisterial District Judge, is $ __**650.00**__
The total amount of the Security Deposit is $ __**650.00**__

| | Total Amount Established by MDJ | Less Security Deposit Applied | = | Adjudicated Amount |
|---|---|---|---|---|
| Rent in Arrears | $ 1,020.00 | − $ .00 | = | $ 1,020.00 |
| Physical Damages Leasehold Property | $ .00 | − $ .00 | = | $ .00 |
| Damages/Unjust Detention | $ .00 | − $ .00 | = | $ .00 |

[ ] Attachment Prohibited/
42 Pa.C.S. § 8127

[ ] This case dismissed without prejudice.

[ ] Possession granted.

[X] Possession granted if money judgment is not satisfied by time of eviction.

[ ] Possession not granted.

| | |
|---|---|
| Less Amt Due Defendant from Cross Complaint | − $ .00 |
| Interest (if provided by lease) | $ .00 |
| L/T Judgment Amount | $ 1,020.00 |
| Judgment Costs | $ 93.00 |
| Attorney Fees | $ .00 |
| **Total Judgment** | $ 1,113.00 |
| Post Judgment Credits | $ _____ |
| Post Judgment Costs | $ _____ |
| **Certified Judgment Total** | $ _____ |

[ ] Defendants are jointly and severally liable.

IN AN ACTION INVOLVING A RESIDENTIAL LEASE, ANY PARTY HAS THE RIGHT TO APPEAL FROM A JUDGMENT FOR POSSESSION WITHIN TEN DAYS AFTER THE DATE OF ENTRY OF JUDGMENT BY FILING A NOTICE OF APPEAL WITH THE PROTHONOTARY/CLERK OF COURTS OF THE COURT OF COMMON PLEAS, CIVIL DIVISION. THIS APPEAL WILL INCLUDE AN APPEAL OF THE MONEY JUDGMENT, IF ANY. IN ORDER TO OBTAIN A SUPERSEDEAS, THE APPELLANT MUST DEPOSIT WITH THE PROTHONOTARY/CLERK OF COURTS THE LESSER OF THREE MONTHS RENT OR THE RENT ACTUALLY IN ARREARS ON THE DATE THE APPEAL IS FILED.
IF A PARTY WISHES TO APPEAL ONLY THE MONEY PORTION OF A JUDGMENT INVOLVING A RESIDENTIAL LEASE, THE PARTY HAS 30 DAYS AFTER THE DATE OF ENTRY OF JUDGMENT IN WHICH TO FILE A NOTICE OF APPEAL WITH THE PROTHONOTARY/CLERK OF COURTS OF THE COURT OF COMMON PLEAS, CIVIL DIVISION.
THE PARTY FILING AN APPEAL MUST INCLUDE A COPY OF THIS NOTICE OF JUDGMENT/TRANSCRIPT FORM WITH THE NOTICE OF APPEAL. EXCEPT AS OTHERWISE PROVIDED IN THE RULES OF CIVIL PROCEDURE FOR MAGISTERIAL DISTRICT JUDGES, IF THE JUDGMENT HOLDER ELECTS TO ENTER THE JUDGMENT IN THE COURT OF COMMON PLEAS, ALL FURTHER PROCESS MUST COME FROM THE COURT OF COMMON PLEAS AND NO FURTHER PROCESS MAY BE ISSUED BY THE MAGISTERIAL DISTRICT JUDGE.
UNLESS THE JUDGMENT IS ENTERED IN THE COURT OF COMMON PLEAS, ANYONE INTERESTED IN THE JUDGMENT MAY FILE A REQUEST FOR ENTRY OF SATISFACTION WITH THE MAGISTERIAL DISTRICT JUDGE IF THE JUDGMENT DEBTOR PAYS IN FULL, SETTLES, OR OTHERWISE COMPLIES WITH THE JUDGMENT.

7/11/05 Date _____ , Magisterial District Judge

I certify that this is a true and correct copy of the record of the proceedings containing the judgment.

_____ Date _____ , Magisterial District Judge

My commission expires first Monday of January, **2010**.                            SEAL

AOPC 31SA-05

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF: **ALLEGHENY**

**ORDER FOR POSSESSION,
RETURN AND NOTICE**

PLAINTIFF: NAME and ADDRESS

Mag. Dist. No.: **05-2-42**

MDJ Name: Hon.
**ROBERT P. RAVENSTAHL, JR**
Address: **3874 PERRYSVILLE AVE
PITTSBURGH, PA**

Telephone: (**412**) **321-0116**    **15214-0000**

**PINECASTLE REALTY
PO BOX 9607
PGH, PA 15226**

VS.

DEFENDANT: NAME and ADDRESS
**JONES, GODINA
519 MCCLINTOCK AVE
PITTSBURGH, PA 15214**

**GODINA JONES
519 MCCLINTOCK AVE
PITTSBURGH, PA 15214**

EXHIBIT H

Docket No.: **LT-0000518-05**
Date Filed:    **7/01/05**

**RESIDENTIAL LEASE**

| | |
|---|---|
| Judgment Amount $ | **1,020.00** |
| Costs in Original LT Proceeding $ | **93.00** |
| Costs in this Proceeding $ | **28.50** |
| Attorney Fees $ | **.00** |
| Total $ | **1,141.50** |

Time Filed:    **1:37PM**
Date Order Filed:  **7/22/05**

**TO THE MAGISTERIAL DISTRICT JUDGE:** The above named plaintiff, having obtained a judgment for possession of real property located at: **519 MCCLINTOCK AVE., PGH, AP 15214**
Address if any:
Requests that you issue an ORDER FOR POSSESSION for such property.
Date: _____    Plaintiff: _____ (Signature on File)

**ORDER FOR POSSESSION**
To: **JOHN A SNYDER**
You are hereby directed to deliver actual possession to plaintiff, or his agent, of real property located at (Give location and/or address):    **519 MCCLINTOCK AVE., PGH, PA 15214**

Date: **7/22/05**    Time: **2:30 p.m.**
Received Date: **7/25/05**    Time: **10:00 AM**    By: _____ Magisterial District Judge/
                                                      Sheriff or Certified Constable

**RETURN**
☐ Defendant (Name):    **GODINA JONES**
☐ Adult person in charge (Name): _____
Served with copy of ORDER FOR POSSESSION and served with NOTICE TO VACATE on (Date of service): _____
at (Location and Address): **519 MCCLINTOCK AVE., PGH, PA 15214**
☐ Since none of the above found, served by posting a copy of the complaint conspicuously on the premises at
(Date): _____ (Time): _____
☐ Order satisfied by payment of rent in arrears and costs    ☐ Premises vacated without forcible entry and ejectment
    Amount Paid $ _____
    
| Distribution | | |
|---|---|---|
| $_____ | To | _____ |
| $_____ | To | _____ |
| $_____ | To | _____ |
| $_____ | To | _____ |
| $_____ | To | _____ |
| $_____ | To | _____ |

☐ Forcible entry and ejectment (Date): _____
                                (Time): _____
☐ Returned within five business days following delivery of possession to plaintiff or satisfaction by payment of rent in arrears and costs.
Expenses and fees of sheriff or certified constable $ _____

_____
(Signature of Sheriff or Certified Constable)

_____
(Print Name and Title)

**NOTICE TO DEFENDANT TO VACATE**
If you, and all the occupants of this property not authorized by the owner to be present thereon, do not vacate this property within ten (10) days after the (date of service) **25TH** day of **JULY 2005**, the law authorizes me to use, and I must use, such force as may be necessary to enter upon this property, by the breaking in of any door or otherwise, and to eject you and all unauthorized occupants. If necessary, eviction will commence on **8/5/05** after 12:01 AM.
At any time before actual delivery of the real property is made in execution of the Order for Possession, the defendant may, in a case for the recovery of possession solely because of failure to pay rent, satisfy the Order for Possession by paying to the executing officer the rent actually in arrears and the cost of the proceedings.
Complete if judgment of possession is based solely on failure to pay rent.    Rent in Arrears $ **1020.00**    Costs $ **124.00**

AOPC 311B-05