IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GODINA JONES ) CIVIL ACTION
)
      Plaintiff, ) C.A. No. **05-1052**
)
  vs. )
) RECEIVED
MICHAEL E. LAMB, PROTHONOTARY )
OF THE COURT OF COMMON PLEAS ) JUL 2 9 2005
OF ALLEGHENY COUNTY, PENNSYLVANIA, )
and CONSTABLE JOHN A. SNYDER, ) CLERK, U.S. DISTRICT COURT
) WEST. DIST. OF PENNSYLVANIA
      Defendants. )

**BRIEF IN SUPPORT OF TEMPORARY RESTRAINING ORDER
AND FOR PRELIMINARY INJUNCTION**

Pennsylvania law provides a statutory right to appeal from adverse maagisterial district court judgments in order to obtain *de novo* review in common pleas courts. However, indigent tenants in eviction proceedings are prevented from having their hearings conducted in common pleas courts prior to losing possession of their residential property. Unlike any other magisterial district court appellants, they are compelled to give up the very thing being litigated prior to having a full hearing in a court of record before a person guaranteed to be a law-trained judge.

No law says directly that indigent tenants will be treated differently from other appellants; however the operation of District Justice Rule 1008B makes this happen. It requires that tenants who file Notices of Appeal requesting *de novo* trials following district justice eviction judgments must pay a bond of (1) the lesser of the judgment for rent allegedly in arrears, or three times the monthly rent as determined by the district justice, and (2) ongoing interlocutory rent determined by the district justice. No appeal bond is required of any persons except those who are tenants in eviction proceedings.

The Defendant Prothonotary enforces this requirement regardless of whether the district

justice determination is wrong as a matter of fact or law.  The Defendant Prothonotary will issue a

"supersedeas" which stays the tenant's eviction pending the outcome of the *de novo* trial, only if the

tenant appellant pays the full bond upon the filing of the appeal, and ongoing rent, thereafter. If the

tenant fails to pay the full bond when the appeal is filed, it is the policy of the Defendant

Prothonotary not to issue a supersedeas. In that case, the landlord is free to follow through with

eviction of the tenant appellant while the appeal is pending.  Once the tenant loses possession of

her home, there is no appropriate remedy available to regain possession, even though the tenant

may well eventually prevail on the merits of her case on appeal.  The right to appeal eviction,

without opportunity to maintain possession pending appeal, is a meaningless ritual for poor

persons because once the costs of moving have been incurred, and the family has been

dislocated, a decision in the common pleas court a few months later that the family did not owe

the rent after all does not repair the damage which has been done.

This is particularly true for families such as the Jones family. Plaintiff Godina Jones is a

single mother with three teenage children. The family could be indefinitely separated if they are

forcibly evicted.

Rule 1008B contravenes the constitutionally guaranteed due process rights of poor tenant

appellants because it inevitably confines the entire litigation of their eviction disputes to the district

justice arena, a forum which was not designed to provide constitutionally adequate due process for

complicated legal claims.  Magisterial district judges are not necessarily trained in the law.

Magisterial district court proceedings are informal, brief, and devoid of discovery or written

findings and conclusions.  No transcript is made during these hearings.

Yet eviction matters are often complicated, arising from disputes over whether federal

regulations have been followed in subsidized rent programs; whether a property is habitable under

the health and building codes; or–as in this case–whether the amount of rent paid was appropriate, given federal regulations which prescribe the maximum amount of rent permitted to be collected by a landlord.

Rule 1008B also violates indigent tenants' rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment because it imposes financial burdens upon tenants which are not imposed upon any other class of litigants who desire to appeal *de novo* adverse district justice judgments.

I.      **RULE 1008B FAILS TO PROVIDE THE SUBSTANTIVE DUE PROCESS REQUIRED BY THE UNITED STATES CONSTITUTION.**

Pennsylvania has guaranteed to all of its citizens through its Constitution, Article I, Sections 6 and 11, and Article V, Section 9, the right to resolve disputes in a court of record, before a law-trained judge and jury.  The imposition of the onerous burdens required by Rule 1008B has effectively barred indigent persons from having the legality of their eviction decided in a court of record with a law-trained judge.

Typically a landlord seeks to regain possession of the leasehold interest, while the tenant claims that by virtue of the lease and applicable law, possession is rightfully his.  Should the landlord elect to proceed to resolve this dispute in district justice court, the tenant is initially bound to submit to that court's jurisdiction.  District justice court proceedings are not recorded; they lack discovery, the ability to join additional parties, and the guarantee of a law-trained judge. The Pennsylvania legislature has constitutionally guaranteed the right to an appeal from such courts to a *de novo* proceeding in the courts of common pleas, where the full array of procedural protections are present.  Thus, if the tenant believes that the dispute has not been fully and fairly resolved in the district justice proceeding, she must take an appeal to the court of common pleas and post a

supersedeas bond to retain possession of the rental property pending the common pleas court proceeding.

As previously noted, the three-month rent or judgment amount bond is prohibitively expensive for indigent persons. This supersedeas bond requirement, as applied to tenant-appellants who are indigent, violates their due process rights under the Fourteenth Amendment.

The question presented to this Court is not one of first impression. The United States District Court for the Eastern District of Pennsylvania considered a constitutional challenge to Philadelphia Municipal Court Rule 124©)(2) which, in all essential respects, is identical to Rule 1008B. In 1998, the District Court struck down Rule 124©)(2) on the basis that it violated the plaintiffs/indigent tenants' substantive and procedural due process rights under the Fourteenth Amendment. <u>Wendolyn Pleasant and Tenants' Action Group v. Joseph Evers, Prothonotary, et al.,</u> No. 97-4124, Memorandum Order (E.D.Pa. Apr. 24, 1998)(Ludwig, J.), LEXSEE 1998 U.S. Dist. LEXIS 5848; 1998 WL 205431. In its decision, the District Court cited the Third Circuit case of <u>Lecates v. Justice of Peace Court No. 4, etc.,</u> 637 F.2d 898 (3rd Cir. 1980) as primary authority for the principle that access to state-granted constitutional rights may not be conditioned upon wealth.[1]

In Pennsylvania a landlord who wishes to evict a tenant must choose between two competing forums. The landlord may elect to initiate suit at Common Pleas, by instituting an action for common-law ejectment. <u>See,</u> 68 P.S. §250.511 and Pa.R.C.P. 1051-1058. Alternatively, the

---

[1]In <u>Smith v. Coyne</u>, 722 A.2d 1022 (Pa. 1999), *reargument den.* (1999), the Pennsylvania Supreme Court rejected the federal constitutional challenges to Rule 1008B posed by the plaintiffs in that case. Nevertheless, the federal courts have repeatedly recognized that, "[a]lthough state courts have the authority to decide issues of federal constitutional law, state court decisions are not binding upon the federal courts," <u>Systems Contractors Corp., v. Orleans Parish School Board</u>, 148 F.3d 571, 575 n.23 (5th Cir. 1998). See, also, <u>Watson v. Estelle</u>, 886 F.2d 1093, 1095 (9th Cir. 1989), "A decision of the Supreme Court of California, construing the Constitution of the United States...is not binding upon the federal courts (citations omitted)." and <u>United States v. Bedford</u>, 519 F.2d 650, 654 n. 3 (3rd Cir. 1975), "It is a recognized principle that a federal court is not bound by a state court's interpretation of federal laws...."

landlord may bring suit in the district justice courts, seeking the recovery of possession of real property, pursuant to the Landlord and Tenant Act of 1951. 68 P.S. §250.101 et seq.

Common Pleas actions for ejectment provide numerous procedural protections, *at no cost*, to the indigent defendant. These protections include: 1) a proceeding of record, 2) a law-trained adjudicator, 3) the right to join additional and necessary parties, 4) a trial before a jury, 5) a written decision indicating the reasons for the decision and the evidence relied upon for same, 6) the right of discovery, and 7) fact-based pleadings. In contrast, district justice eviction proceedings provide *none* of these procedural safeguards.

The only way for an indigent tenant to obtain the same procedural safeguards accorded a tenant sued at Common Pleas is to pay a rent-in-arrears or triple-monthly-rent bond which frequently exceeds the tenant's capacity to pay. <u>Perversely, the greater the District Justice's error in determining the rent owed, the higher the bond that the indigent tenant faces, and the greater the likelihood that the indigent tenant will be unable to pay the bond.</u> [2] Under this regime, therefore, landlords in Pennsylvania who wish to evict indigent tenants on the basis of alleged unpaid rent are virtually assured of success, *regardless of the merits of the case*, merely upon the district justice's finding of rent in arrears.

Clearly, Rule 1008B gives landlords of indigent tenants in Pennsylvania a tremendous tactical advantage in eviction lawsuits. Any landlord who desires to evict an indigent tenant will *always* elect to initiate suit at district justice court instead of at Common Pleas, because of the probability that, if the tenant does not prevail, the tenant will, by virtue of the tenant's indigence, be

---

[2]Calculations of monthly rent often involve complicated applications of law to fact, as in situations where tenants have mixed periods of working and unemployment, but their subsidized rent obligation is based upon income modified by certain employment, daycare, and other deductions. In such cases, the computation can only be done correctly after rulings on the application of various deduction regulations to the particular situation.

effectively prevented from exercising the right to obtain a *de novo* appeal trial before a forum which provides significantly greater due process protections to litigants.   Because the Due Process Clause of the Fourteenth Amendment forbids such forum-shopping, the continued enforcement of Rule 1008B must be enjoined.

The United States Court of Appeals decision in <u>Lecates v. Justice of the Peace Court No. 4,</u> <u>supra</u>, is precedential here.  Primarily relying on the United States Supreme Court's decision in <u>Boddie v. Connecticut</u>, 401 U.S. 371 (1971), the Third Circuit Court held that in cases where states allowed the same cause of action to be brought in courts of concurrent jurisdiction, it was unconstitutional for the state to allow a plaintiff's choice of forum to limit the procedural protections available to a defendant.

The facts of <u>Lecates</u> are as follows: In Delaware, a plaintiff pursuing an action for debt collection could initiate a cause of action in any one of three courts of concurrent jurisdiction, justice of the peace, common pleas, or superior court.  Justice of the peace proceedings in Delaware are commenced by praecipe. They are expeditiously scheduled, informally conducted, and not of record–like Pennsylvania's district justice proceedings.  There is no provision for trial by jury, discovery is limited to a bill of particulars, and decisions are not accompanied by published precedential opinions–again, similar to Pennsylvania district justice proceedings.  Like Pennsylvania district justices, Delaware justices of the peace are not required to be lawyers admitted to the bar, and commonly are not.

An indigent defendant in one of these proceedings, Lecates challenged the state's surety appeal bond requirement on the basis that by virtue of the bond, which he could not afford, he was deprived of a trial *de novo* in superior court, and all of the procedural protections which would have accompanied the trial, such as recorded proceedings, access to a jury, and so forth.  The <u>Lecates</u> court, relying on <u>Boddie</u>, found that the appeal bond violated the defendant's substantive due

process rights of access to the courts, in that the plaintiff's initial choice of forum had foreclosed the range of procedural protections available to the defendant.

> The due process clause guarantees indigent defendants in civil suits the same extent of access to the "appropriate" procedures and protections of the state-controlled legal machinery as is available to more affluent litigants. Lecates, 637 F.2d at 907.

The similarities with Pennsylvania's magisterial district court system are striking. In Pennsylvania proceedings may be commenced by a notice, not fact based pleading. There is not discovery permitted in Pennsylvania district justice courts (Rule 325(1) Pa.R.C.P.D.J.) Though it is unclear whether joinder of additional parties is available in Delaware, this is not permitted in district justice proceedings in Pennsylvania (Rule 325(2) Pa.R.C.P.D.J.) As in Delaware, the vast majority of Pennsylvania district justices are not lawyers, admitted to the bar, while it is constitutionally required that common pleas judges be so qualified (Pa. Constitution Article 5, § 12).

In Boddie v. Connecticut, supra, indigent persons were prevented from divorcing because of a non-waivable filing and service fee requirement. The Supreme Court emphasized that marriage involves interests of basic importance in our society, but also founded its decision to strike the divorce court fees for indigents on the basis that the fees barred indigents from access to the courts, which were the only forum resolving their marital disputes. The Court stated that,

> the successful invocation of this governmental power by plaintiffs has often serious problems for defendants' rights. For at the point the judicial proceeding becomes the only effective means of resolving the dispute at hand and denial of a defendant's full access to that process raises grave problems for its legitimacy.

The Lecates court recognized that civil defendants have a substantial interest in the resolution of disputes carried out in justice of the peace proceedings. Thus the court concluded:

> Boddie directly supports the proposition that an indigent civil defendant such as Lecates has a right of equal recourse to the

> complete range of the trial machinery by which the state declares
> legal rights and imposes legal obligations.  <u>Lecates</u>, 637 F.2d at 907.

In the particular case of evictions, of course, the interest at stake for the indigent tenant is a matter of fundamental importance.  For example in <u>Memphis Gas & Light Co. v. Craft</u>, 436 U.S. 1, 98 S. Ct. 1554 (1978),  the Supreme Court found that utility service supplied to heat a home was an important right to be protected by due process.  Further the <u>Lecates</u> court looked to the "central wisdom of <u>Boddie</u>" that

> Due process requires, at a minimum, that absent countervailing state
> interest of overriding significance, persons forced to settle their
> claims of right and duty through the judicial process must be given a
> meaningful opportunity to be heard.  637 F.2d at 909.

To determine what constitutes a "meaningful opportunity to be heard," the Third Circuit Court looked to Delaware statutes which, like Pennsylvania,  guaranteed a jury trial for civil disputes and hearing before a law-trained judge at some stage in the process.  The court noted the increasingly complex contemporary legal system and discussed an empirical study which "disclosed that lay judges demonstrated measurable bias against indigents and policies or legal rules designed to aid the poor." <u>Id.</u> at 911.  The <u>Lecates</u> court concluded that an appeal bond which presented an insurmountable barrier to an indigent defendant's ability to appeal from a justice of the peace judgment violated due process because it cut off the indigent defendant's ability to receive a meaningful opportunity to be heard.  The Court did not determine the bond requirement to be per se unconstitutional; but as applied, insofar as it is not waivable, "it denies indigents due process of law." <u>Ibid.</u>

The contrast between procedural rights afforded defendants in magisterial district courts in Pennsylvania and those rights which Pennsylvania purports to guarantee to all litigant through its constitution is as stark as that in Delaware, if not more so.   Not only may plaintiffs in district justice proceedings commence actions with mere notice pleadings, but there is no opportunity

afforded a defendant to learn the particulars of a plaintiff's claim to property to prepare a defense. In addition, it is within the plaintiff's exclusive control to determine who the parties are to a district justice proceeding.

If an eviction proceeding is initiated in common pleas court, fact based pleadings are provided and the right to discovery. A trial is on the record. All responsible parties are before the court. There is a right to a trial by jury. There is a guarantee that the trial will be presided over by a law-trained judge. If initiated in the district justice courts, these procedural safeguards are delayed and effectively denied to indigent defendants in direct proportion to the extent of the error these safeguards are designed to prevent. Thus, if rent payments made by the tenants or third parties are not properly credited, if rent is improperly designated as rent, if statutory and or common law defenses to rent payment are ignored or misapplied, the consequence of this error would work to preclude a tenant from appealing these errors.

Indeed, in the case at bar, Plaintiff Godina Jones possesses receipts from her landlord which disclose that, for the months of February, March, April and May 2005, she paid the landlord a total of twice the amount of rent that she owed under the federally-regulated Section 8 program.. These over-payments, not credited by the magisterial district judge for reasons not articulated in the boilerplate judgement, must now be paid <u>again</u> as part of the supersedeas bond in order to challenge the incorrect calculation in the first place. An indigent person does not have the ability to pay twice that which was improperly credited the first time.

Since magisterial district court proceedings are not of record, and because there are no written factual findings which accompany the district justice judgments, it is impossible to detect even gross irregularities in the reasoning or calculations of the rental amounts which are set by the district justices and then become the supersedeas bond requirements.

To the extent that the Rule 1008B supersedeas requirement is applied to indigent defendants

like Godina Jones, it effectively precludes them from appealing district justice judgments for possession, and as a consequence denies them access to procedural protections afforded all litigants in Pennsylvania. In accordance with <u>Lecates</u> and <u>Boddie</u>, this requirement must be held to violate due process.

It is clear that the primary purpose of the current supersedeas requirement is to secure a past award of rent due (up to three months arrearage), as opposed to a judgment for any other sum of money due to a landlord as the result of suing a tenant. A tenant defendant who wishes to appeal a judgment for against him for damage done to the landlord's property will not have to pay a supersedeas bond in order to stay in the premises pending appeal. A non-tenant defendant will not need to pay any supersedeas bond at all to appeal any judgment for money no matter how large.

Plaintiff Jones does not challenge that an ongoing, current rent payment should be paid into the state court as a condition of supersedeas. This ongoing payment secures the landlord's interest in compensation for and protection of property pending appeal. The Commonwealth's interest in protecting a landlord's past monetary award, however, is no greater for past rent than for past damage or past utility payments.

II      **RULE 1008B VIOLATES PLAINTIFF'S RIGHT TO PROCEDURAL DUE PROCESS.**

Under the standards enunciated by the Supreme Court in the case of <u>Goldberg v. Kelly</u>, 397 U.S. 254, 269, 90 S.C. 1011, 1021 (1970), a deprivation under color of state law is unconstitutional unless it is predicated upon a written statement of both the reasons for the decision, as well as the evidence relied upon in making the decision. The forms used by district justices manifest a facial constitutional deficiency. For example, the forms provide no opportunity for district justice to state whether and to what degree the evidence of the respective parties was found credible. Similarly, the

forms fail to inform the litigants of the precise reasons underlying the magisterial district court judgment.  In Pennsylvania, there is no procedural mechanism by which an indigent tenant may receive a fuller explication of the adverse judgment. Because Rule 1008B virtually ensures that the only process that an indigent tenant will receive will be limited to the district justice forum, with its attendant Goldberg-deficiencies, it violates the Fourteenth Amendment.

Additionally, application of the four-prong balancing test required by Mathews v. Eldridge, 424 U.S. 319, 96 S.C. 893 (1976) and Connecticut v. Doer, 501 U.S. 1, 111 S.C. 2105 (1991) establishes that Rule 1008B violates procedural due process: as applied, the rule guarantees that indigent tenants will be deprived of the right of possession without ever having received constitutionally adequate process.  The Matthews/Doer test requires a comparison of 1) the private interest affected by the deprivation (Matthews, 424 U.S. at 335, 96 S.C. at 903), 2) the risk of erroneous deprivation, and the probable value of additional or substitute procedural safeguards Id., 3) the private interest to be vindicated by the deprivation (Doer, 501 U.S. at 11, 111 S.C. at 2112), and 4) the government's interest in providing the procedure or forgoing the added burden of providing greater protections.  Id.

Clearly the importance of affordable, decent housing to indigent tenants is extremely high. The indigent tenant's interest, moreover, far outweighs that of the landlord (for whom a dispute for rental arrearages is legally indistinguishable from a garden-variety debtor/creditor dispute for money).[3]

Enjoining the continued enforcement of Rule 1008B will actually reduce the administrative

---

[3]Rule 1008B does not "protect" landlords who prove to the magisterial district court judge that the tenant has damaged the leasehold.  Nowhere is there any provision securing an award for physical damages.  Instead, the Rule conditions the Prothonotary's issuance of a supersedeas solely on the tenant's payment of *rent*, whether in-arrears or interlocutory.  Thus, the Rule only protects landlords against rental defaults.

burdens shouldered by the Prothonotary's office, which is currently obligated to collect, hold, and disburse tenant rents for the landlord's benefit. While enjoining the enforcement of Rule 1008B will admittedly increase the number of indigent tenants who request a *de novo* trial, it can hardly be argued that the Commonwealth has a legitimate interest in dissuading citizens from exercising these same rights, which the Commonwealth has created for their benefit. 42 Pa.C.S. § 5105(d)(4).

III.   **RULE 1008B VIOLATES PLAINTIFF'S RIGHT TO EQUAL PROTECTION GUARANTEED BY THE UNITED STATES CONSTITUTION.**

In Williams v. Illinois, 399 U.S. 235 (1970) the Supreme Court considered an Illinois statute that permitted Williams to be incarcerated beyond the maximum statutory sentence because he was unable to pay the fine imposed as part of his sentence. The Court found that the law which permitted prisoners to avoid extra imprisonment only by paying their fines violated the Equal Protection Clause. Even though the statute was non-discriminating on its face, "the law worked an invidious discrimination" as to Williams and all other indigents because they could not afford to pay their fines. 399 U.S. 235, 242   As Justice Scalia would later write, "the basis of that invalidation [in *Williams*] was not a denial of due process but denial to indigent prisoners of equal protection of the laws." Pacific Mut. Life Ins. v Haslip, 499 U.S. 1, 33 (1991), *concurring opinion.*

In  Lindsey v. Normet, 405 U.S. 56 (1972), the Supreme Court held that the requirement to pay ongoing rent during the pendency of the appeal of an eviction action is permissible and that part of Rule 1008B is not challenged here. However, the Lindsey Court found that a double bond required in order to appeal an order of eviction violated equal protection:

> The discrimination against the poor, who could pay their rent pending an appeal but cannot post the double bond, is particularly obvious. For them, as a practical matter, appeal is foreclosed, no matter how meritorious their case may be. The nonindigent FED appellant also is confronted by a substantial barrier to appeal faced

by no other civil litigant in Oregon.  The discrimination against the class of FED appellants is arbitrary and irrational, and the double-bond requirement of ORS § 105.160 violates the Equal Protection Clause.  Lindsey, 405 U.S. at 79.

The Lindsey Court was concerned with the impact upon indigent persons, but actually looked to the effect of the double bond as a discrimination against the entire class of litigants in landlord-tenant cases.  The Court in passing noted that a bond to protect a judgment was not *per se* a violation of due process, but that the large bond, which was larger even than the judgment below and automatically forfeited upon judgment for the landlord in a higher court, was constitutionally defective.

Later, in M.L.B. v. S.L.J., 519 U.S. 102 (1996) the Supreme Court invalidated a statute that required persons appealing from termination of their parental rights to pay for a transcript of the lower court proceedings in order to appeal.  In discussing the ramifications of the *Williams* holding, the Court pointed out the unconstitutional unfairness of singling out indigents:

> Sanctions of the *Williams* genre, like the Mississippi prescription here at issue, are not merely disproportionate in impact.  Rather, they are wholly contingent on one's ability to pay, and thus "visit different consequences on two categories of persons," [cite omitted]; they apply to all indigents and do not reach anyone outside of that class.  519 U.S. 102, 126-27.

The bond requirement of Rule 1008B does not affect tenant defendants who are judged to have damaged the premises where they live.  It does not apply to tenant defendants who have been found to default on their agreements to pay for utilities outside of their rent obligation.  It only affects persons who have been judged to owe rental arrears.  It is apparent, thus, that the bond does not have the purpose of preserving the landlord's judgment–if it did, judgments for tenant damages and utility payments would also be protected, as would the full amount of the judgment for rent.  Instead, the three-month rent limit of the rule clearly targets the hardship of the rule to those most

economically vulnerable, for non-indigent persons are much less likely to have 1, 2, or 3 months of

rent available to post a bond, (whether or not they have already paid the rent that is in dispute, as in

the case of Ms. Jones) than are more wealthy persons.  Thus, Rule 1008B erects barriers to appeal

specifically by indigent tenants with rental arrearages which are faced by no other class of

appellants for reasons not rationally related to any legitimate end.  As the Supreme Court held in

Romer v. Evans, 517 U.S. 626, 632, 116 S.Ct. 1620, 1627 (1996):

> [We insist on knowing the relation between the classification
> adopted and the object to be attained.  The search for the link
> between classification and objective gives substance to the Equal
> Protection Clause; . . . By requiring that the classification bear a
> rational relationship to an independent legitimate legislative end, we
> ensure that classifications are not drawn for the purpose of
> disadvantaging the group burdened by the law.

**IV     The Plaintiff is entitled to have this Honorable Court enjoin the Defendants from
evicting her prior to a *de novo* trial at the Court of Common Pleas.**

The decision to grant or deny Ms. Jones a temporary restraining order and preliminary

injunction is controlled by the following four-prong inquiry:

(1)     whether the movant has shown a reasonable probability of success on the merits;

(2)     whether the movant will be irreparably injured by denial of relief;

(3)     whether granting preliminary relief will result in even greater harm to the
nonmoving party;  and

(4)     whether granting the preliminary relief will be in the public interest.

Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 879 (3rd Cir. 1997), on remand, 999

F.Supp. 607 (D.N.J. 1998).  As explained below, application of these considerations to the facts of

this case establishes that Godina Jones's request for a temporary restraining order and preliminary

injunction must be granted.

**A. The Plaintiff is likely to succeed on the merits of her claim that Rule 1008B violates the Fourteenth Amendment guarantees of Due Process and Equal Protection.**

Following the precedent of <u>Lecates</u>, <u>M.L.B</u>, and <u>Boddie</u>, it is apparent that there is a likelihood that Plaintiff will succeed on the merits of her claim. (See Arguments I, II, and III above). Indeed, in a previous similar case filed before this Court, the Honorable William L. Standish, expressly relying on <u>Lecates</u>, <u>Wendolyn Pleasant and Tenants' Action Group</u>, and the findings and relief in two prior cases before this Court, granted a Preliminary Injunction and relief against the Defendant Prothonotary and the Pennsylvania constable defendant, identical to the relief requested by the Plaintiff in this action. A copy of Judge Standish's July 10, 2000 Order is attached as Exhibit A.

**B. The Plaintiff will be irreparably harmed by eviction.**

The potential consequences of a wrongful eviction of a low-income household are many and severe. Because of the desperate scramble for alternative housing,[4] low-income tenants, who have

---

[4]As the Pennsylvania Supreme Court has recognized, the acquisition of suitable housing is hampered by the attendant market conditions, none more so than the "vast" inequities in bargaining power between landlords and tenants. <u>Pugh v. Holmes</u>, 405 A.2d 897, 902 (Pa. 1979). In <u>Pugh</u>, the Pennsylvania Supreme Court reaffirmed its observation of eleven years earlier that:

> Stark necessity very often forces a tenant into occupancy of premises far from desirable and in a defective state of repair. The acute housing shortage mandates that the average prospective tenant accede to the demands of the prospective landlord as to conditions of rental, which, under ordinary conditions with housing available, the average tenant would not and should not accept.
>
> No longer does the average prospective tenant occupy a free bargaining status and no longer do the average landlord-to-be and tenant-to-be negotiate a lease on an 'arm's length' basis.

<u>Id</u>. citing <u>Reitmeyer v. Sprecher</u>, 431 Pa. 284, 243 A.2d 395 (1968).

In addition to the perils presented by substandard dwellings, there moreover remains the

the least bargaining power of any class of tenants, are often coerced by economic realities into accepting substandard housing in the aftermath of a forced eviction.  Moreover, it is unlikely that Ms. Jones will be able to obtain immediate housing where she and her children will be able to remain together or in the community that they have settled. This will be a major problem for the family because the eldest son has seizures, and his mother will be unable to watch over him after their forced eviction.

Ms. Jone's family is limited to her sister and her mother. Her mother is on dialysis and lives with her sister who cares for the mother. There is no room left at her sister's house and therefore, Ms. Jones has no friends or family who can provide shelter, even temporarily, for her and her children.

Ms. Jones's income pays for her household and family necessities.  As a result, a forced eviction from her home will most likely mean the loss of her family possessions and personal belongings, because she lacks the financial means to transport and store them.

### C.     The damages to Ms. Jones in the event of a forced eviction from her current home are not readily ascertainable.

There is no reliable way to measure in dollars the harm that would be visited upon Ms. Jones and her family in the event that they are wrongfully forced from their community.  As a general matter, this Court may take judicial notice that the vestiges of homelessness, as they affect indigent tenants, are not readily quantifiable: The injury from loss of employment opportunities; the

---

reality of race-based discrimination in housing.  See, e.g., Resident Advisory Board v. Rizzo, 564 F.2d 126 (3rd Cir. 1977).  Recent empirical studies reaffirm that race-based housing discrimination remains a prevalent practice in Western Pennsylvania.  See, Beauregard and Jones, "Impediments to Fair Housing Choice: Allegheny County, McKeesport, Pittsburgh, and Penn Hills," (Fair Housing Partnership of Greater Pittsburgh/Greater Pittsburgh Community Housing Resource Board, 1992).

disruption in the educational, social, and religious lives of the entire family; the possibility of being forced by circumstance into accepting an even worse apartment; the loss of all of one's material possessions, are circumstances with which most judges and juries are unfamiliar, and concerning which they would have no baseline for comparison.

### D.   Enjoining the eviction of Ms. Jones and her children will not result in appreciable harm to either of the Defendants.

Enjoining the eviction of Ms. Jones and her family will not result in any harm to either the Prothonotary or Constable Snyder.  On the contrary, the Prothonotary can easily alter its current procedures to accommodate an injunction of Rule 1008B, because this would simply require a return to the procedures which had been in place for a 16-month period ending in January, 1999. During that time, the Prothonotary's office had suspended enforcement of Rule 1008B against indigent tenants pursuant to an injunction of the Court of Common Pleas.[5]    Likewise, enjoining the eviction of Ms. Jones will not harm Constable Snyder in any way.

Relieving Ms. Jones of the need to escrow $1020 cash for the rent-in-arrears bond will place her landlord in no worse position than any other judgment creditor.  As previously stated, her landlord's claim for back rent is no different than any other judgment creditor's claim for a past debt.  While it is conceivable that a landlord who had proven property damage before the district justice would merit some enhanced protection, such as the deposit of cash into escrow as security pending the trial *de novo*, Rule 1008B does not concern itself with this problem.  Instead, Rule 1008B only seeks to secure a judgment for a past *rent* debt.  There is no special reason why Ms. Jones's landlord, unlike any other judgment creditor, should have a magisterial district court award for back rent protected in this manner pending the outcome of the *de novo* appeal trial.

---

[5]Robert Smith and Gayle Rusch v. Michael F. Coyne, Prothonotary of Allegheny County, Pennsylvania, and Carmen Nobile, 146 P.L.J. 139 (C.C.P. Allegheny County, 1997).

**E.      Enjoining the eviction of Ms. Jones and her family will promote the public interest.**

To the extent that Rule 1008B greatly magnifies the risk that indigent tenants will be wrongfully evicted from their homes prior to a full airing and consideration of, their claims, the public interest demands that this Court take reasonable steps to ensure that Ms. Jones and her family are not prevented from vindicating their rights in a constitutionally adequate forum.

**III.    Conclusion**

As premised upon Rule 1008B, the proposed eviction of Ms. Jones and her family is in violation of her Fourteenth Amendment rights to Due Process and Equal Protection of Law, and must be enjoined.

Respectfully Submitted:

/s/ Eileen D. Yacknin
Eileen D. Yacknin
Pa.I.D. 26525


/s/ Mary Ellen Droll
Mary Ellen Droll
Pa.I.D. 67618

Counsel for Plaintiff
Neighborhood Legal Services Association
928 Penn Avenue
Pittsburgh, PA 15222
(412) 255-6700, ext. 6155, 6116

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANA WOOD,                                    )          CIVIL ACTION
                                              )
            Plaintiff,                        )          No. C.A.  00-1313
                                              )
    vs.                                       )
                                              )
MICHAEL F. COYNE, PROTHONOTARY                )
of the COURT of COMMON PLEAS                  )
of ALLEGHENY COUNTY,                          )
PENNSYLVANIA and                              )
CONSTABLE MICHAEL SARSFIELD,                  )
                                              )
            Defendants.                       )


## ORDER OF COURT

AND NOW, this __17__ day of July, 2000, upon consideration of the Plaintiff's Motion For

Preliminary Injunction, after evidentiary hearing and legal argument, and for good cause shown,

this Court finds as follows:

    1.  Based upon the evidence presented, and in light of the decisional law of this Circuit

(Lecates v. Justice of Peace Court No. 4, etc., 637 F.2d 898 (3rd Cir. 1980)), as well as the

Memorandum Order of the District Court for the Eastern District of Pennsylvania in Wendolyn

Pleasant and Tenants' Action Group v. Joseph Evers, Prothonotary, et al., No. 97-4124 (E.D. Pa.

April 24, 1998) (Ludwig, J.), and the findings and relief entered in two prior cases before this

Court, Jones v. Coyne, et al., CA No. 00-926 (Standish, J.) and Edwards v. Coyne, et al., CA 99-

391 (Lee, J.), this Court finds that the Plaintiff is likely to succeed on the merits of her claim that

Rule 1008B of the Pennsylvania Rules of Civil Procedure for District Justices unconstitutionally

violates the Fourteenth Amendment guarantees of due process and equal protection.

EXHIBIT A

2. This Court finds that the Opinion and Decision of the Pennsylvania Supreme Court in Smith v. Coyne, 722 A.2d 1022 (Pa. 1999), is not binding upon this Court with regard to the foregoing federal constitutional challenges raised in the instant action.

3. This Court finds, based upon the evidence presented, that unless this Court enjoins the Defendants from effecting the eviction of the Plaintiff and her two minor children, Plaintiff and her family will be evicted, and become homeless, and thereby suffer irreparable harm.

4. This Court finds that the issuance of a preliminary injunction to prevent the forcible eviction of the Plaintiff and her children, pending the conclusion of Plaintiff's *de novo* trials in the Allegheny County Court of Common Pleas, will not result in harm to either of the Defendants.

5. This Court finds that the issuance of a preliminary injunction on behalf of the Plaintiff will serve the public interest.

WHEREFORE, the Plaintiff's Motion For Preliminary Injunction shall be, and is therefore GRANTED, as follows:

a. Supersedeas is entered against the judgment for possession issued by District Court No. 05-2-23, in the case captioned Carnegie Towers v. Wood, LT 157-00, until the conclusion of the Plaintiff's *de novo* trials in the Court of Common Pleas of Allegheny County, Pennsylvania, in the case captioned Carnegie Towers v. Wood, No. LT 00-203.

b. Defendant Constable Michael Sarsfield is enjoined from enforcing any Order For Possession of the Plaintiff's leased residence and from forcibly dispossessing the Plaintiff and her children from their residence at 820 Capital Drive, Carnegie, PA 15106. Constable Sarsfield is likewise enjoined from soliciting the assistance or complicity of any other person to effect an eviction of Plaintiff and her children.

c. The foregoing injunction is conditioned upon the Plaintiff's payment of ongoing

monthly rent in the amount of $36.00, beginning with the payment for rent for July 2000, which shall be deposited with the Clerk of the District Court.

d. Trial on this matter is set for November 17, 2000 at 10 o'clock a.m., Courtroom No. 6, Sixth Floor, USPO & Courthouse, Pittsburgh, Pennsylvania 15219.

e. The Plaintiff shall post nominal bond of $1.00.

f. This Order supersedes the Temporary Restraining Order entered by this Court on July 7, 2000.

BY THE COURT:

Hon. William L. Standish
United States District Judge